

**FILED**
11/16/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

ER

**1:21-CV-6116**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN, JACQUELINE BARRON, THERESA BOSAN, SHRANDA CAMPBELL, KETURAH CARTER, MICHELLE DAHN, TONYA EXUM, JEANNETTE GARDNER, ARLENE GOFORTH, CHRISTINE HARRIS, ORISSA HENRY, LAWANDA JORDAN, DANIELLE KUDIRKA, TERRI LEWIS-BLEDSOE, CONSTANCE MADISON, CEPHANI MILLER, MIYOSHI MORRIS, STEPHANIE SZOT, SHIRLEY THOMAS-MOORE, ROSE THOMAS, TONI WILLIAMS, BERNADETTE CLYBURN, MARTHA CORBIN, ANGELA GLENN, LADWYNA HOOVER, OGERY LEDBETTER, LATRICIA SHANKLIN, ANTOINETTE SULLIVAN, DERRICKA THOMAS, and NICHEA WALLS, each individually and on behalf of similarly situated persons, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| FORD MOTOR COMPANY, | ) ) |
| Defendant. | ) ) |

Case No. 14-CV-08708

JUDGE SHARON JOHNSON COLEMAN

Jury Trial Demanded

JUDGE LEINENWEBER
MAGISTRATE JUDGE JANTZ

**SECOND AMENDED CLASS ACTION COMPLAINT FOR
INJUNCTIVE, MONETARY AND CLASS WIDE RELIEF**

## INTRODUCTION

The Plaintiffs, Christie Van, Charmella Leviege, Maria Price, Helen Allen, Jacqueline Barron, Theresa Bosan, Shranda Campbell, Keturah Carter, Michelle Dahn, Tonya Exum, Jeannette Gardner, Arlene Goforth, Christine Harris, Orissa Henry, Lawanda Jordan, Danielle Kudirka, Terri Lewis-Bledsoe, Constance Madison, Cephani Miller, Miyoshi Morris, Stephanie Szot, Shirley Thomas-Moore, Rose Thomas, Toni Williams, Bernadette Clyburn, Martha Corbin, Angela Glenn, LaDwyna Hoover, Ogery Ledbetter, Latricia Shanklin, Antoinette Sullivan, Derricka Thomas, and Nichea Walls (hereafter, the "Named Plaintiffs"), each individually and on behalf of persons similarly situated, complain against the Defendant, Ford Motor Company as follows:

1.      This is a proceeding for declaratory and injunctive relief and damages to redress the deprivation of Plaintiffs' and Plaintiff's similarly situated individuals' civil rights under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*) ("Title VII"), under 42 U.S.C. § 1981 ("Section 1981"), under the Americans with Disabilities Act, as amended (42 U.S.C. §12101) ("ADA"), and for state law causes of action.

## THE PARTIES

2.      Each of the thirty-three (33) Named Plaintiffs are or were employed by Ford at its Assembly Plant or Stamping Plant in this judicial district and most reside here.

3.      The putative members of the plaintiff class all live or work (or previously worked) for Ford within this judicial district at Ford's Assembly Plant or Stamping Plant.

4.      Defendant Ford Motor Company operates at least two facilities in the Chicago area.

2

5.     Ford's Chicago Assembly Plant is located at 12600 South Torrence Avenue in Chicago, Illinois and in this judicial district.

6.     Ford's Chicago Stamping Plant is located at 1000 E. Lincoln Highway in Chicago Heights, Illinois and in this judicial district.

7.     All of the named plaintiffs ("Named Plaintiffs") and putative class members were employed at either Ford's Chicago Assembly Plant or its Chicago Stamping plant or both between January 1, 2012 and the present.

8.     Ford is an "employer" within the meaning of Title VII (42 U.S.C. § 2000e-(b)), and the ADA (42 U.S.C. § 12111).

9.     Ford is engaged in an "industry affecting commerce" as that phrase is used in Title VII.

10.    Ford employs more than 4,000 employees at its Chicago Assembly Plant and more than 800 employees at its Chicago Stamping plant.

## JURISDICTION AND VENUE

11.    Jurisdiction over the Plaintiffs' federal law claims exists pursuant to 28 U.S.C. § 1331 as these claims involve Federal Questions under Title VII (42 U.S.C. § 2000e-5), and Section 1981 (42 U.S.C. § 1981 and §1981a), and the ADA (29 U.S.C. §12101).

12.    This Court has Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' state law claims which arise out of the same nucleus of operative fact giving rise to the federal law claims.

13.    The Court has jurisdiction over the Parties and the subject matter.

14. Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices stated herein were, in whole or in part, committed within the Northern District of Illinois.

15. Venue further lies within this judicial district under 28 U.S.C. § 1391(c), since Defendant Ford Motor Company does business in this judicial district -- Ford operates at least three (3) plants including the Chicago Assembly Plant and Stamping Plant in this judicial district.

## EEOC CHARGES

16. Each of the following Named Plaintiffs timely filed written charges with the EEOC asserting employment discrimination, sexual harassment and retaliation: Christie Van (Ex. 1(A) and 25(A)), Charmella Leviege (Ex. 2(A)), Maria Price (Ex. 3(A)), Helen Allen (Ex. 4(A)), Jacqueline Barron (Ex. 5(A)), Theresa Bosan (Ex. 6(A)), Shranda Campbell (Ex. 7(A)), Keturah Carter (Ex. 8(A)), Michelle Dahn, (Ex. 9(A)), Tonya Exum (Ex. 10(A) and 26(A)), Jeannette Gardner (Ex. 11(A)), Arlene Goforth (Ex. 12(A)), Christine Harris (Ex. 13(A)), Orissa Henry (Ex. 14(A)), Lawanda Jordan (Ex. 15(A)), Danielle Kudirka (Ex. 16(A)), Terri Lewis-Bledsoe (Ex. 17(A)), Constance Madison (Ex. 18(A)), Cephani Miller (19(A)), Miyoshi Morris (Ex. 20(A)), Stephanie Szot (Ex. 21(A)), Shirley Thomas-Moore (Ex. 22(A)), Rose Thomas (Ex. 23(A)) and Toni Williams (Ex. 24(A)).

17. The EEOC issued Notices of Right to Sue to these Named Plaintiffs. (The Notices of Right to Sue are attached as Exhibits 1(B)-24(B)).

18. Each of these Named Plaintiffs' claims are timely filed in federal court within ninety (90) days of their receipt of their Right to Sue Letters.

4

19.    This Complaint alleges acts of unlawful harassment and discrimination occurring between February 14, 2012 and the present (hereafter, the "Relevant Time Period"), however, Antoinette Sullivan only seeks redress for acts which occurred subsequent to July 11, 2012.

### THE EEOC DETERMINED THAT NAMED PLAINTIFFS ARE MEMBERS OF A CLASS OF WOMEN WHO WERE SEXUALLY HARASSED AND WHO WERE UNLAWFULLY DISCRIMINATED AGAINST

20.    The EEOC conducted an investigation of Ford's Chicago Assembly Plant and its Chicago Stamping Plant based on the Charges of Discrimination (Ex's. 1(A)-26(A)) filed by the Named Plaintiffs.

21.    After its investigation, the EEOC concluded that several of the Named Plaintiffs were members of a Class of women who were sexually harassed and were subjected to gender discrimination and/or race discrimination.

22.    The EEOC issued a Determination for Named Plaintiff Christie Van who worked at Ford's Chicago Assembly Plant finding:

> The Charging Party alleged that she and a Class of employees were discriminated against based on their sex, female, in that they were subjected to sexual harassment and gender based harassment and that they were further harassed and subjected to different terms and conditions of employment in retaliation for engaging in protected activity, in violation of Title VII.
>
> The Charging Party further alleged that she and a Class of employees were discriminated against based on their race, Black, in that they were subjected to racial harassment and that they were further harassed and subjected to different terms and conditions of employment in retaliation for engaging in protected activity, in violation of Title VII.
>
> *   *   *
>
> I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated

5

against Charging Party and a Class of employees based on their sex, female, in that they were subjected to sexual harassment and gender based harassment, in violation of Title VII.

I have further determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a Class of employees based on their race, Black, in that they were subjected to racial harassment, in violation of Title VII.

(Ex. 1(C)).

23.     The EEOC has made similar Determinations for Plaintiffs who also work at the Ford Chicago Assembly Plant including Named Plaintiffs Leviege (Ex. 2(C)), Price (Ex. 3(C)), Allen (Ex. 4(C)), Barron (Ex. 5(C)), Carter (Ex. 8(C)), Dahn (Ex. 9(C)), Gardner (Ex. 11(C)), Lewis-Bledsoe (Ex. 17(C)), Miller (Ex. 19(C)), and Williams (Ex. 24(C)).

24.     The EEOC issued a Determination for Named Plaintiff Shranda Campbell who worked at Ford's Chicago Stamping Plant finding:

The Charging Party alleged that she was discriminated against based on her sex, female, in that she was subjected to sexual harassment and that she was further harassed and subjected to different terms and conditions of employment in retaliation for engaging in protected activity, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a Class of employees based on their sex, female, in that they were subjected to sexual harassment and gender based harassment, in violation of Title VII.

(Ex. 7(C)).

25.     The EEOC made similar Determinations for Named Plaintiff Tonya Exum who also works at the Ford Chicago Stamping plant. (Ex. 10(C)).

6

## OTHER NAMED PLAINTIFFS

26.     Plaintiffs Bernadette Clyburn, Martha Corbin, Angela Glenn, LaDwyna Hoover, Ogery Ledbetter, Latricia Shanklin, Antoinette Sullivan, Derricka Thomas and Nichea Walls also worked for Ford at the Chicago Assembly and/or Stamping Plants.

27.     Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls also experienced gender discrimination, sexual harassment and/or a hostile working environment during the Relevant Time Period of the type and nature which Van, Barron, Campbell and the rest of the Named Plaintiffs complained about to the EEOC.

28.     From 2012 to present, more than two dozen EEOC charges of unlawful sexual harassment, gender discrimination, race discrimination and retaliation were filed against Ford based on conduct at Ford's Chicago Assembly and Stamping plants.

29.     Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls are each members of the Class of women described by the EEOC in its Determinations. (*See, e.g.,* Ex. 1(C)).

30.     Given that dozens of charges of sexual harassment, gender discrimination and race discrimination were filed and pending at the EEOC, Ford and the EEOC was adequately apprised that an ongoing pattern and practice of sexual harassment, gender discrimination and race discrimination was taking place at the Ford Chicago Assembly Plant and Stamping Plant.

31.     Ford did not conciliate the EEOC Determinations issued which are attached as exhibits to this Amended Complaint, despite that several of these EEOC charges had been pending for years. (*See,* Ex's. 1(C)-5(C), 7(C)-11(C), 17(C), 19(C) and 24(C)).

32.     Because Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls allege unlawful harassment and discrimination that are substantially similar to those of the dozens of other women who are Named Plaintiffs who timely filed EEOC Charges, these Plaintiffs are eligible to file their claims in this matter under the "single filing" or "piggybacking" rule.

33.     Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls piggyback their claims in this lawsuit with those of the above Named Plaintiffs who filed timely file charges with the EEOC.

34.     It would be futile to require Plaintiffs Clyburn, Corbin, Glenn, Hoover, Ledbetter, Shanklin, Sullivan, Derricka Thomas and Walls and all women who experienced sexual harassment and gender or racial discrimination at Ford from 2012-present to file EEOC charges.

35.     Named Plaintiff Christie Van currently works at the Stamping Plant and continuing discrimination, sexual harassment and retaliation that she experiences since her transfer are included herein based on the single filing rule/piggybacking rule and/or based on consolidation of her additional claims with this suit by Court Order.

## PRIOR DISCRIMINATION AND SEXUAL HARASSMENT AT FORD

36.     Prior to this lawsuit, at least nine people sued Ford for sexual harassment, sex discrimination, race discrimination, assault, battery intentional infliction of emotional

distress and negligent retention in *Rivera v. Ford Motor Company, No.* 95-CV-2990 in the United States District Court for the Northern District of Illinois.

37. In 1997, a total of 14 women filed a Class action lawsuit against Ford Motor Company in a case known as *Warnell v. Ford Motor Company*, No. 98-CV-1503 in the United States District Court for the Northern District of Illinois.

38. In 1999, the EEOC attempted to reach a settlement with Ford requiring Ford to pay $7.5 million toward training and to create a fund to compensate victims. The EEOC Conciliation Agreement subjected Ford to workplace monitoring for a period of 3 years.

39. The EEOC investigated Ford's Stamping and Assembly Plants in 1994-1995 and again in 1998. As a result of those investigations, the EEOC issued findings in the form of a Determination which states:

> I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that a Class of female employees at Ford's Chicago area manufacturing facilities, including the Charging Party, has been subjected to sexual harassment by managers and non-managers. The women have been called sexually degrading names such as bitches, whores and offensive references to female genitalia, as well as being subjected to Plaintiff's profanity. They have been physically touched, grabbed and groped, and have had body parts massaged without their consent. They have had to endure sexual comments and innuendos including suggestive references to female body parts and their functions. In addition, the women have been subjected to sexually explicit graffiti, including drawings of male and female genitalia with sexual terms and, at times, references to specific named women throughout the facilities. The presence of Plaintiff's pornographic materials such as calendars and Plaintiff's pictures of nude women also contributes to the hostile and sexually offensive environment.

40. The EEOC found Ford sexually harassed and discriminated against a Class of females on at least eight (8) occasions including in connection with Charges of

Discrimination filed by Michelle Sheets, Traci Graham, Rebecca Curwick, Juanita Rivera, Veronica Kuznieski, Jeannette Jones, Wilynthia Wiseman and Mary Ann Allegria.

41.    Ford is a recidivist offender that willfully ignored the issues and evidence raised in prior litigation and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace.

42.    Ford knowingly allowed sexual harassers, molesters and sex offenders to remain in the workplace and repeat heinous acts of sexual harassment on Ford's female employees.

43.    Ford engaged in a pattern and practice of discrimination, harassment and retaliation and the Plaintiffs have been subjected to harassment, discrimination and a hostile working environment including, but not limited to:

a.  Sexual assault and attempted rape;

b.  Unwelcomed and unwanted sexual advances;

c.  Requests for sexual favors;

d.  Unwanted and unwelcomed touching and groping;

e.  Being subjected to jeers, lewd comments, sexual suggestions, cat-calls and the like;

f.  Being stared at by male employees who were focused on certain parts of plaintiff's body and/or "elevator eyes";

g.  Being subjected to comments or offers of sexual contact or males stating what they could or would like to do to Plaintiffs or other women;

h.  Being subjected to men exposing their genitals and/or showing pictures of their genitals;

i.  Being subjected to men sharing or displaying pornographic images in the workplace;

j.   Graffiti in the workplace;

k.   By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

l.   Female employees are referred to as "bitches," "hoes," "whores," "sluts" and "dogs" on an ongoing basis;

m. Sexually offensive graffiti is painted on the walls in the plants and defendants did not take effective corrective action;

n.   Male employees also place sexually offensive graffiti about female employees in the men's bathrooms;

o.   Male employees routinely undress in full view of female employees at various areas of the plant;

p.   Male employees fail to properly button their uniforms such that their pubic hair is exposed;

q.   Male employees would routinely stare at female employees in a sexually offensive manner;

r.   Male employees would routinely make crude and lewd comments directed at female employees, such as "Are you cold? I can tell that you are cold by looking at your nipples."

s.   Female employees are sometimes exposed to condoms thrown into their work areas or tool boxes;

t.   Female employees are subjected to whistles, offensive touching, gazing and comments such as "what color are your underclothes?" on a daily basis;

u.   At various times, male employees would rub against females, pretending as though they dropped something on the floor;

v.   In many instances, this harassment occurs in the presence of Ford's supervisors and Ford would take no disciplinary action, or insufficient action, against employees who engage in such sexually offensive conduct;

w. Defendants' Human Resources and Labor Relations personnel routinely reveal confidential medical information regarding female employees to Plaintiff's workers in the plants;

x. After such information is leaked, male employees subjected female employees to ridicule, offensive jokes and embarrassment;

y. Male employees have historically been paid for overtime that they did not work, while female employees are required to work every hour that they are paid;

z. Males are allowed personal days even when not entitled to them, while female employees are harassed and are not given such days off;

aa. Female employees that complained were written up or threatened with termination;

bb. Ford's male supervisors routinely assigned tasks to employees on a discriminatory basis by assigning better tasks to those female employees who submit to their sexual advances or who agree to go out with them;

cc. The less desirable tasks would be assigned to the female employees who reject or do not submit to their sexual advances;

dd. On many occasions, female employees would see soiled sanitary napkins moved from the ladies room to the aisles where they are in full view of male employees and supervisors;

ee. Males would make lewd comments such as "look at these -- old nasty bitches" as they walked past;

ff. Male employees and supervisors regularly sabotage the work areas of female employees in different and innumerable ways;

gg. On numerous occasions, female employees would have phallic symbols (penis-like objects) thrown in their work areas, tool boxes, or thrown at them. Such objects would sometimes be carved out of rubber hoses, Styrofoam, etc. by some male employees during their breaks;

hh. Some female employees would frequently find pictures of penises placed on their tool boxes or work areas;

ii. On a daily basis, women are harassed, denigrated and referred to as "bitch," stupid bitch," "you fucking people," mother-fuckers, "cunt," and "fucking bitches";

jj. Male employees and supervisors call woman who make sexual harassment complaints "snitch bitches";

kk. At various locations in Defendant's plants, posters and drawings that are humiliating to women are posted or displayed, including: pictures and posters of nude women, sex organs, female private parts, people performing sex acts, lesbians having intercourse, penises, pictures of black women performing oral sex on white men, etc. Some of these pictures are in full view at various places throughout the plants.

44. Male employees routinely make discriminatory and harassing remarks and gestures in front of supervisors and managers who take no action to discipline employees, to eradicate the harassment or maintain an appropriate workplace environment.

45. Defendant maintained a pattern and practice of inferior treatment of females with respect to the terms and conditions of employment, including job assignments, harassment, training, promotions and overtime assignments.

46. Ford's pattern and practice of harassment and discrimination and a hostile working environment from the 1980's and 1990's has continued through and including the present time.

47. Ford is aware of the ongoing discrimination and harassment which occurs on a daily basis in an open manner, such that it is observed by employees and supervisors, and has turned a blind eye toward it.

## SEX AT FORD

48.     Historically, Ford employees have organized parties which have been held both on and off site at the respective plants at which strippers and/or prostitutes were present.

49.     During these parties, attended by both management and hourly employees, various employees engaged in lewd and lascivious behavior, including sexual acts.

50.     These parties and the lewd, disgusting and foul activities involved were, on information and belief, recorded and captured on video and on camera.

51.     Tickets to such parties were sold in the plants during working hours.

52.     Invitations to such parties were distributed throughout the plants, both orally and in writing.

53.     The videos and photos from prior parties, including visual depictions of strippers, prostitutes, nudity, sex acts and pornographic material relating to the parties, were frequently distributed and displayed throughout the plants.

54.     In approximately 1997 or 1998 NBC acquired a copy of a tape from a sex party and broadcast portions of the tape on television as part of the coverage of the *Warnell* case.

55.     On numerous occasions – both during the 1980's and 1990's, as well as during the Relevant Time Period, various male supervisors and managers have used their offices, the parking lot and various places throughout the plant, including on the roof to have sexual relations with other employees during work.

14

56.     The frequent sex that takes place in the building contributes to the hostile and offensive work environment.

57.     Top ranking employees in both management and human resources regularly engaged in sex at work.

58.     As an example, Superintendents Robert Devine and Myron Alexander required female personnel at Ford's Chicago Assembly Plant to provide them with sexual favors as a precondition to promotional opportunities.

59.     As recently as April 2016, a Ford manager demanded and received oral sex from a new employee.

60.     Terrance McClain, the Human Resources Manager at Ford's Chicago Assembly Plant, frequently sexually harassed women, including women who complained to him about sexual harassment.

61.     Ford's upper level Supervisors and HR professionals have covered up sexual harassment complaints made by mid-level supervisors sexually harassing women or retaliating against women who complained.

62.     As further examples, Supervisors such as Jeff Bivens and Zack Bozanick repeatedly sexually harassed female employees and/or retaliated against them when they complained.

63.     Ford's upper level Supervisors and HR professionals targeted complaining women with discipline and termination.

64.     Ford promoted many complained-about, sexually harassing Supervisors.

65.     Since this lawsuit was filed, and after multiple sexual harassment or retaliation complaints were filed against each of them, Robert Devine, Jeff Bivens and Zack Bozanick were promoted.

66.     That Superintendents and Human Resource Management engaged in sex at Ford made it untenable for women to complain about sexual harassment, a hostile working environment and discrimination to these supervisors and managers or to go to Human Resources and Labor Relations about these problems.

67.     That Ford protected and rewarded sexually harassing Supervisors with promotions and terminated sexually harassed women that complained further discouraged sexual harassment victims from complaining.

68.     When the Named Plaintiffs and other women began complaining about sexual harassment, Ford's Labor Relations Supervisor, Jim Larese confronted then-union chairman Grant Morton and told him "your people better stop complaining."

69.     Other Labor Relations personnel, including Fluretta Drummer and Natalie Dahrenger confronted Morton, told him they were upset that women were filing sexual harassment complaints with the EEOC, and told him that complainers would be terminated if they did not drop their EEOC charges.

70.     Ford engaged in a practice of intimidation and retaliation which, on information and belief, had the effect of making additional sexual harassment victims reluctant to complain.

## PLAINTIFF CLASS

71.     This case is being brought under Fed. R. Civ. P. Rule 23(b)(2), or, in the alternative, pursuant to Fed. R. Civ. P. Rule 23(b)(3).

72.     In addition to the Named Plaintiffs, there are more than 1000 women working at the two plants who have been subjected to, or who work within the same hostile working environment in which the Named Plaintiffs are employed.

73.     Numerous women beyond the Named Plaintiffs filed EEOC charges and filed internal complaints about sexual harassment and the hostile workplace environment to which they are subjected at Ford and forced to endure.

74.     The Class Claims include sex discrimination and sexual harassment under Title VII and race discrimination and harassment under Title VII and 42 U.S.C. § 1981. In addition, various Named Plaintiffs are asserting individual claims.

75.     The Plaintiff Class includes: all present or former female employees at the Ford Chicago Assembly Plant and the Ford Chicago Stamping Plant from 2012 through the present.

76.     The Class potentially includes the following sub-Classes: (1) all female employees except Team Leader and managers alleging gender discrimination and sexual harassment claims; and (2)   female team leaders and managers alleging gender discrimination and sexual harassment claims ; (3) female African American employees alleging race claims.

77.     The EEOC's issued "reasonable cause" Determinations with respect to these class allegations. (Ex's. 1(C)-5(C), 7(C)-11(C), 17(C), 19(C) and 24(C)).

17

78.     The members of the Class, and each sub-Class, are so numerous as to render joinder impractical.

79.     There are questions of law and fact which are common to the Class and those questions predominate over questions which may not be common.

80.     The claims of the Named Plaintiffs, who are class representatives, are typical of the claims of the absent Class members.

81.     The Named Plaintiffs will fairly and adequately protect the interests of the Class and the sub-classes.

82.     The Class action mechanism is the most efficient and most appropriate mechanism for resolving this controversy.

## COUNT 1

## TITLE VII-SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT
**(VAN, LEVIEGE, PRICE, ALLEN, BARRON, BOSAN, CAMPBELL, CARTER, DAHN, EXUM, GARDNER, GOFORTH, HARRIS, HENRY, JORDAN, KUDIRKA, LEWIS-BLEDSOE, MADISON, MILLER, MORRIS, SZOT, THOMAS-MOORE, R. THOMAS, WILLIAMS, CLYBURN, CORBIN, GLENN, HOOVER, LEDBETTER, SHANKLIN, SULLIVAN, D. THOMAS, WALLS, and all similarly situated women)**

83.     Plaintiffs adopt, reallege and incorporate by reference the allegations contained in paragraphs 1-84 of this Second Amended Complaint as and for this paragraph.

84.     The individual Named Plaintiffs identified in this Count adopt and incorporate by reference all allegations of sexual harassment and of a hostile work environment alleged in their respective EEOC Charges and Charge Outlines (Ex's. 1(A)-26(A)) as if set forth here.

85.     Plaintiff Van incorporates by reference her separate EEOC charges related to sexual harassment she experienced at both the Chicago Assembly Plant (Ex. 1(A)) and Chicago Stamping Plant (Ex. 25(A)).

86.     Plaintiff Exum also filed multiple charges based on sexual harassment and retaliation which she experienced at Ford's Stamping Plant, both of which are incorporated by reference herein. (Ex. 10(A) and 26(A)).

87.     Several of the Named Plaintiffs, including Ogery Ledbetter and Martha Corbin have experienced decades of sexually harassing conduct at Ford, but the extent that sexual harassment has run rampant in the last few years is the worst they ever saw.

88.     In addition to the allegations in the Charges of Discrimination (Ex.'s 1-26) the Named Plaintiffs and other similarly situated female employees have been sexually harassed, in one or more of the following ways, by being subjected to:

    a.  Unwanted or unwelcome sexual advances;

    b.  Unwelcome and unwanted touching,

    c.  Requests for sexual favors;

    d.  Stories of sexual conquests, desires or escapades;

    e.  Comments about the female anatomy;

    f.   Comments about individual women's body parts;

    g.  Comments about what a male "would like to do" to or with a particular female sexually;

    h.  Comments of a sexually suggestive nature,

    i.   Name calling using names demeaning toward women such as "bitch", "slut" or "whore" or "hoe";

    j.   Graffiti and/or pornography images;

    k.  Pictures of genitalia and/or of a sexual nature

    l.   Lurid, foul and offensive language, and/or

    m.  Other conduct of a sexually inappropriate nature for the workplace.

89.     Sexual batteries and assaults were a normal occurrence at Ford. As further examples of unwelcome or unwanted touching, Ford's supervisors, managers and employees touched, groped and sexually assaulted the Named Plaintiffs and other similarly situated female employees including but not limited to the following instances:

    a.  Superintendent Myron Alexander repeatedly groped Michelle Dahn, Latricia Shanklin's and other similarly situated women's buttocks, and attempted to do

the same to Ogery Ledbetter, while saying to Ledbetter: "I'm going to feel that booty before you leave and you can't do nothing about it."

b. Alexander inappropriately touched, caressed, hugged, lifted, squeezed, and/or attempted to kiss Shanklin, Ledbetter, Terri Lewis-Bledsoe, Martha Corbin, Michelle Dahn and similarly situated female co-workers, despite that these women repeatedly told Alexander that they did not want to be touched.

c. Alexander called Miyoshi Morris into an upstairs office and when she entered, forcibly grabbed Morris by the wrist, pulled out his penis and forced her hand to touch his penis as she struggled to break free from his grasp.

i. On a separate occasion, Alexander assaulted Shanklin in a similar way when she came out of the upstairs women's restroom, he instructed she follow him to a nearby upstairs office and demanded she give him a "hand job", threatening she would be terminated if she refused, resisted or complained.

d. Alexander physically assaulted Jeannette Gardner and made her believe she was about to be raped when he grabbed her right arm from behind, forcefully twisted it behind her back, bent her down over a desk against her will and pushed himself up against her backside while two other male Supervisors, George Melchor and Kevin Taylor watched and did nothing.

e. Christie Van was repeatedly groped and inappropriately touched on her buttocks, thigh, shoulders and back by numerous male employees, including co-workers Bruce (last name unknown) and Kenny (last name unknown) and men that Van did not know.

f. Ken Millender repeatedly touched, groped and slapped Tonya Exum's buttocks and did the same to numerous women at Ford's Stamping Plant, and Ken Millender has refused to contest these allegations in a proceeding before the Illinois Human Rights Commission.

g. Exum and other similarly situated have been inappropriately touched in a sexually harassing way on the back, shoulders and arms by several male co-workers, including Neely Clemons and Marquis Sullivan, despite that Exum repeatedly and explicitly told these men "keep your hands to yourself."

h. Superintendent Darryl Galloway regularly touched Danielle Kudirka and other similarly situated female employees on the shoulders, necks and arms and insisted on hugging Kudirka even though she told him she did not want to be touched.

21

i.   Supervisor Buck Owens inappropriately touched Charmella Leviege's breasts and asked her "when's the last time you had sex?"

j.   Coby Millender repeatedly touched, grabbed and tried to kiss Miyoshi Morris and numerous similarly situated women even though they did not want to be touched.

k.   Ron Woods repeatedly grabbed and touched Arlene Goforth's buttocks when he walked by her station.

l.   Co-workers named Rappa Arrington and Jeremy (last name unknown) repeatedly groped Michelle Dahn's buttocks and breasts.

m.   Supervisor Robert Powell regularly and repeatedly made sexual advances toward Toni Williams, Teresa Bosan and Angela Glenn and inappropriately touched subordinate female employees, including that he repeatedly touched Bosan, Glenn and women on the shoulders, arms and back and when Glenn told him to stop, he told her "I do it with all the women and I'm going to keep doing it to you" and "you belong to me now."

n.   Male supervisors regularly stood directly behind female employees who were bent over working, such that when the female stood up or backed up, her buttocks bumped into the man's penis/pelvis, including Robert Powell (who did this to Theresa Bosan and other women) and Kendall Brooks (who did it to Jacqueline Barron and other women).

o.   Supervisor Rich Murray pushed his penis/pelvis into/against Shranda Campbell's buttocks and Supervisor Mike Reese stepped in close behind Nichea Walls and pressed his penis/pelvis against Walls' buttocks.

p.   Supervisor Rich Murray inappropriately touched Campbell's shoulders, waist and body making her feel uncomfortable and violated.

q.   A male co-worker physically assaulted another woman Campbell closely worked with, Kim Sykes, giving her a "half-nelson" with one arm so that she could not get away, while using his free arm to grope Sykes' buttocks.

r.   When Campbell and Sykes complained about being sexually assaulted, they were criticized and ridiculed for being "bitches" and "hoes" for complaining about sexual assaults.

s.   Kendall Brooks repeatedly slapped and groped Barron's buttocks, grabbed her hair and groped her breasts.

t.   Jabari Muse grabbed and squeezed Maria Price's buttocks, and reached inside her coveralls and groped her breasts.

u.   Group Leader Lance Caldman forcibly pulled Michelle Dahn into a utility closet against her will, forcefully unzipped her coveralls, pulled her shirt up as high as he could, forced his hand down her pants and attempted to rape her before she finally broke free.

v.   Keturah Carter was inappropriately touched on her neck, back, shoulders and the top of her buttocks by men she worked with, including LaDell Conway, who made the unwanted statement to Carter that he wanted to massage her full body.

w.   Christine Harris has been repeatedly touched, groped and gyrated against by her Team Leader Tony (last name unknown), and after she complained, Tony further humiliated her, held her down and "dry humped" her from behind on multiple occasions.

x.   Although Christine Harris fought Team Leader Tony off of her and repeatedly begged him to stop sexually harassing her, he forcefully grabbed Harris and told her ""Get used to it. I do it to all the girls and I'm going to keep doing it to you."

y.   Ford employee Chris Martin repeatedly and inappropriately touched and rubbed Stephanie Szot's back, shoulders and arm at work and groped her buttocks.

z.   Ford employee Wilde Regatte molested Stephanie Szot by forcefully grabbing her, putting his hand inside her clothes and groping and rubbing his hand against her breast.

aa. A co-worker named "Reggie" (last name currently unknown) hugged and gyrated his crotch against Charmella Leviege.

bb. Other male supervisors and managers including Union Building Chairman Coby Millender, Kevin ("Red") Marshall and Reggie Easter constantly and repeatedly greeted many of the Named Plaintiffs and numerous other female co-workers with unwanted and uncomfortable touches and hugs.

cc. A male parts-delivery employee sexually grabbed Constance Madison's co-worker Rita Kelly from behind (around her hips/waist) and gyrated against her.

90.    In addition to the allegations in the Charges of Discrimination (Ex.'s 1-26) and as described elsewhere in the complaint, Ford's supervisors, managers and

employees subjected the Named Plaintiffs and other women to sexually harassed and a hostile working environment in non-physical ways, including but not limited to the following instances:

    a.  having sex in the workplace, the parking lot, the roof of the building and other areas of the workplace;

    b.  talking about sexual escapades which took place both in and outside of the workplace;

    c.  making unwelcome requests for sexual favors and grotesque sexual acts;

    d.  offering money, drugs and alcohol for sex;

    e.  threatening sexual batteries or rape;

        i.  one employee, Franklin Stottlemeyer has threatened one or more female employees that he was going to rape them;

        ii.  other employees, including as an example, Myron Alexander, has threatened women, including Ogery Ledbetter that he was going to grope her buttocks and "there isn't anything you can do to stop me."

        iii.  When Tonya Exum told Ken Millender to stop groping her he told her "shut the fuck up" and threatened that he would harm her if she complained.

    f.  showing their penises and asking women to "suck it" or telling women "I'm going to choke you by shoving my dick down your throat";

    g.  showing "dick pic's" or videos of themselves masturbating using their cell phones, including that both Supervisors Fonseca and Reese showed women (including Plaintiffs Van and Nichea Walls) pictures of their penises on their cell phone, and when Van reported Supervisor Fonseca's misconduct to Reese, he laughed and asked her "do you want to see mine too?"

    h.  showing women pornographic magazines or pornographic cell phone images and/or videos;

    i.  commenting about women's vaginas and breasts in degrading and sexual ways;

j.   commenting about women vaginal secretions, infections and menstrual cycles in degrading and sexual ways including as an example, that Supervisor Willie Fonseca repeatedly made offensive, degrading, humiliating and sexual comments toward women, including telling Cephani Miller that her pants were so tight he hoped she got a yeast infection, and commenting that stains on her pants looked like vaginal discharge.

k.   commenting about their desire to perform sex acts on the Named Plaintiffs and similarly situated women;

i.   Numerous men repeatedly made unwanted requests for permission to perform oral sex on the Named Plaintiffs and other women. Just a few examples of this pervasive conduct include:

1.   Marquis Sullivan repeatedly asked Tonya Exum "can I eat your pussy?" and "just lay there and let me eat it."

2.   When Latricia Shanklin complained about other sexually harassing supervisors to Human Resources Manager Terrance McClain, McClain told her "I want to suck your pussy."

3.   Ken Millender repeatedly told women "get with a hero and let me eat your pussy."

l.   jeering, making lewd comments, sexual suggestions and cat–calls;

m.   referring to new female employees as "fresh meat";

n.   talking and gesturing about the size of their penis;

o.   commenting women's buttocks with statements that women had a "big booty", "loose booty", "nice ass" and "fat ass" and, in the case of Robert Cronenwett, grading women including Constance Madison as to whether they had "enough ass" for him;

p.   making bets with each other about which male would be the first to have sex with new female employees;

q.   assigning the women to work areas requiring them to constantly bend over in front of the male supervisor with their buttocks in the air;

r.   constantly staring at women's breasts and buttocks;

s. offering better job assignments, better overtime opportunities and better opportunities for promotions if the Named Plaintiffs and similarly situated women had sex with them;

t. demoting and/or assigning the Named Plaintiffs and similarly situated women to less desirable job opportunities when they rejected male supervisors' sexual requests;

u. ridiculing the Named Plaintiffs and similarly situated women during sexual harassment training sessions;

v. Following a sexual-harassment awareness session, Plaintiff Szot witnessed male co-workers joking about the training and continuing to harass women, including that one of the men was wearing a t-shirt with a silhouette of a naked woman on a pole with the words "I support single mothers" – suggesting that women who are single mothers are best suited to stripping or prostitution in order to support their children.

w. asking the Named Plaintiffs and similarly situated women to be their "work wife" even after the women had rejected their sexual advances;

x. stalking several of the Named Plaintiffs and similarly situated female employees who rejected their sexual advances.

91.    In addition to sexually harassment and a hostile working environment described elsewhere in this Complaint, the following Named Plaintiffs suffered sexual harassment in the following ways, creating a hostile working environment:

a. <u>Bernadette Clyburn</u>: Plaintiff Bernadette Clyburn and other similarly situated women was repeatedly subjected to pervasive and ongoing sexual stares, comments and innuendo from male co-workers, including but not limited to the following examples:

   i.   Male co-workers frequently discussed the size of their penis with Plaintiff and with each other in front of Plaintiff and other women.

   ii.   As an example, a co-worker named Joe stated he had "all of ten inches waiting for your pleasure."

   iii.   Plaintiff was sexually harassed when male Supervisors and co-workers frequently stood behind her and other women and stared at women's buttocks.

iv.     Plaintiff continues to be sexually harassed when male co-workers repeatedly and frequently make sexual comments such as "I'd like to get all up in that" --- recently made by a male employee in the Trim Department.

v.      Plaintiff was sexually harassed when Supervisors, including Human Resources Manager Terrance McClain bragged about his sexual conquests, including with female employees and supervisors.

vi.     McClain bragged about his ability to get women better jobs in the workplace if they had sexual relations with him.

vii.    McClain bragged that he could do whatever he wanted and that he even had sexual relations with female supervisors.

viii.   Plaintiff was offended when male employees frequently grabbed, groped, hugged and had sex with female employees in her presence.

ix.     Plaintiff was sexually harassed when a male employee named Troy regularly touched women and used the upstairs bathroom to have sex with women at work.

x.      Plaintiff was offended when Supervisors knew about and permitted Troy to have sex with women in the bathroom.

xi.     Sexual harassment is especially pervasive on C-Crew at the Assembly Plant. While temporarily working on C-Crew, Plaintiff was offended by discussion between male employees of which female employees would provide sex or sex acts for money either in the workplace or in the parking lot.

xii.    The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

b.  Martha Corbin: Plaintiff Martha Corbin and similarly situated women were sexually harassed when Superintendent Myron Alexander and other male co-workers and supervisors repeatedly touched and groped her and made unwanted sexual comments to her, including but not limited to the following examples:

i.      Superintendent Myron Alexander repeatedly and regularly picked Plaintiff up and flirtatiously touched her.

ii.     This touching and flirtation was unwanted and offensive.

27

iii.    Plaintiff repeatedly told Alexander "no" and "stop" but he continued to do touch and make unwanted sexual comments to Plaintiff.

iv.    Other men also made sexual harassing comments to Plaintiff, including for example, co-worker John Williams, who regularly talked about and commented to Plaintiff about her "big booty."

v.    Despite Plaintiff's frequent pleas for her male Supervisors and co-workers to stop making sexual comments to her, the comments continued.

vi.    Plaintiff became tense and emotionally upset whenever sexually harassing male supervisors and co-workers came near her.

vii.    Plaintiff's female co-workers Terri Lewis-Bledsoe and Ogery Ledbetter complained to the sexual harassment hotline to no avail.

viii.    Ford failed to remedy these complaints.

ix.    Rather than continue to endure ongoing sexual harassment, Plaintiff retired early from Ford.

x.    Had Plaintiff worked in a harassment-free workplace, she would have continued working at Ford and would not have retired early.

xi.    The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

b.    <u>Angela Glenn</u>: Plaintiff Angela Glenn was sexually harassed by male Supervisors and co-workers who repeatedly requested sex and touched, groped and caressed her and other similarly situated women in offensive ways, including but not limited to the following examples:

i.    Supervisor Robert Powell regularly and inappropriately touched subordinate female employees, including Plaintiff.

ii.    Powell repeatedly touched Plaintiff on the shoulders, arms and back.

iii.    Plaintiff complained about this unwanted and offensive touching and told Powell to stop touching her at work.

iv.    Supervisor Powell responded: "I do it with all the women and I'm going to keep doing it to you."

28

v.   When Plaintiff received a position assignment away from Powell, Powell had Supervisor Darren McElroy reassign Plaintiff back to his work area.

vi.   Powell told Plaintiff: "you belong to me now" and continued to sexually harass her verbally and physically.

vii.   The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

c.   LaDwyna Hoover: Plaintiff LaDwyna Hoover has been sexually harassed by offensive and unwanted touching, groping and requests from sex, including but not limited to the following examples:

i.   Plaintiff was confused and upset even on her first day of work, as she and other female employees were warned by a Labor Relations Representative that they would be sexually harassed upon being given an introductory tour of the plant and that male employees would refer to them as "fresh meat."

ii.   Plaintiff was sexually harassed when she and other new female employees were whistled at and referred to as "fresh meat."

iii.   Plaintiff was sexually harassed when some male employees pointed at her and shouted "she's mine."

iv.   Supervisor Jeffrey Bivens made unwanted sexual advances toward Plaintiff and told Plaintiff that he could easily fire her if she refused his sexual demands.

v.   Bivens attempted to have sex with Plaintiff at work when he called her into his office claiming she needed to sign some paperwork.

vi.   Bivens turned the lights down, and touched or caressed her arm and hand.

vii.   This touching was offensive, unwanted and Plaintiff immediately pulled away and refused to have sex with Bivens.

29

    viii.    Despite that Plaintiff refused his sexual advances, Bivens continued to repeatedly make unwanted requests for sex or sexual favors from Plaintiff.

    ix.    On one occasion, Bivens implied that he would pay Plaintiff to have sex with him and when Plaintiff rejected Bivens' request for sex, he responded "then I guess you don't want to make this money."

    x.    Plaintiff was repulsed and sexually harassed that Bivens and other men considered her and other female employees to be prostitutes.

    xi.    Plaintiff complained about Bivens' sexual harassment to no avail.

    xii.    Ford terminated Plaintiff.

    xiii.    Ford promoted Bivens.

    xiv.    The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

d. <u>Ogery Ledbetter</u>: Plaintiff Ogery Ledbetter and other similarly situated women was repeatedly subjected to pervasive and ongoing sexual stares, comments and innuendo from male co-workers, including but not limited to the following examples:

    i.    Superintendent Myron Alexander repeatedly and regularly picked up, hugged and sexually and flirtatiously touched and groped Plaintiff's female co-workers, including Marth Corbin and Terri Lewis-Bledsoe.

    ii.    Plaintiff's co-workers complained to Plaintiff that these touches were unwelcome and unwanted.

    iii.    Plaintiff began to watch for whenever Superintendent Alexander came into her work area and warned her co-workers that the sexual predator was near.

    iv.    Plaintiff told Alexander that he should not touch her and that he should not touch other women at work.

    v.    Alexander told Plaintiff that unless she quit or retired, he was going to grope her buttocks just like he groped other women.

vi.     Alexander told Plaintiff that "there isn't anything you can do to stop me."

vii.    As Alexander said this, he walked toward Plaintiff. Plaintiff fled the work area to avoid a sexual battery.

viii.   Alexander also sexually harassed women by taking nude or nearly-nude pictures of himself on his phone and showing it to Plaintiff and other women at work.

ix.     Other men in Plaintiff's work area also made sexual harassing comments to Plaintiff and her female co-workers, including comments about women's breasts and buttocks.

x.      John Williams told Plaintiff that "all the men" commented on her being "too hot."

xi.     Numerous men frequently discussed that Plaintiff and other women had "nice asses", "big butts" and "big juicy booties."

xii.    Plaintiff was sexually harassed by constant uncomfortable sexual from male co-workers.

xiii.   Plaintiff pleaded for her male Supervisors and co-workers to stop making sexual comments to her and her female co-workers, but in response to these pleas, she was criticized for being an "old hen" and the sexually offensive comments continued.

xiv.    Plaintiff complained to her supervisor and to Labor Relations that women could not walk anywhere in the plant without men staring at women's buttocks or requesting romantic or sexual relations.

xv.     Plaintiff's complaints were to no avail and Ford failed to remedy these complaints.

xvi.    Superintendent Charlie Smart forbade Plaintiff from going to Labor Relations and to stop complaining about sexual Harassment, telling her "don't go to Labor Relations, you're going to get me fired."

xvii.   Rather than continue to endure ongoing sexual harassment, Plaintiff retired early from Ford.

xviii.  Had Plaintiff worked in a harassment-free workplace, she would have continued working at Ford and would not have retired early.

31

xix.     The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

e.     <u>Latricia Shanklin</u>: Plaintiff Latricia Shanklin was sexually harassed when she received unwanted requests for sex and sexual comments from numerous men in Ford's Assembly Plant and when she was sexually assaulted, including but not limited to the following examples:

i.      Superintendent Brian Hubbard made unwanted or unwelcome sexual advances toward the Plaintiff.

ii.     Hubbard made repeated sexual statements to the Plaintiff, including describing sexual acts he wanted to perform on her.

iii.    Hubbard made repeated and unwanted requests for dates and physically romantic relations which Plaintiff refused.

iv.     Hubbard told Plaintiff that he had a large penis and that she would be "hooked" on it if she had sex with her.

v.      Hubbard repeatedly told Plaintiff that she would be sexually interested in him if she would just let him massage her feet.

vi.     Hubbard issued discipline against Plaintiff's daughter, terminated Plaintiff's daughter and subsequently told Plaintiff that he would not have disciplined or terminated Plaintiff's daughter and that her daughter would still be working at Ford if Plaintiff would have accepted his romantic requests.

vii.    Plaintiff was physically sexually assaulted by Superintendent Myron Alexander, as described elsewhere in this complaint.

viii.   Alexander told Plaintiff she was "so pretty" and made unwanted, offensive comments about Plaintiff's breasts and buttocks.

ix.     Alexander rubbed up against Plaintiff's buttocks with his pelvis.

x.      Alexander forcefully tried to kiss Plaintiff and grope her breasts.

xi.     Plaintiff repeatedly complained to Human Resources Manager Terrance McClain about sexual harassment at Ford including sexual harassment from Hubbard.

xii.    Over time, when Plaintiff continued complaining to McClain about sexual harassment, McClain became progressively more aggressive in sexually harassing Plaintiff.

xiii.   Eventually, McClain told Plaintiff "I want to suck your pussy" and "I want to fuck you. I know you got some good pussy" and sexually assaulted Plaintiff.

xiv.    After McClain was moved away from the Assembly Plant, she again complained to Ford's sexual harassment hotline, to no avail.

xv.     After Plaintiff repeatedly complained about sexual harassment from Brian Hubbard, he was promoted to Superintendent.

xvi.    Sexual harassment at Ford caused Plaintiff substantial emotional distress which necessitated Plaintiff take substantial medical leave from work.

xvii.   The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

f.   Antoinette Sullivan: In addition to other forms of sexual harassment as described elsewhere in this Complaint, Plaintiff Antoinette Sullivan was sexually harassed when she received unwanted requests for sex and sexual comments from numerous men in Ford's Assembly Plant, including but not limited to the following examples:

i.      After July 13, 2012, Plaintiff continued to be sexually harassed by complained-of sexual predator Michael Francisco.

ii.     After Plaintiff complained about sexual harassment by Francisco, he was promoted to Team Leader.

iii.    Francisco used his position as Team Leader to continue to offend and sexually harass women throughout at least the summer and fall of 2012.

33

iv.     In or about early August, 2012, Francisco openly bragged to male co-worker Paris Garu while standing in front of Sullivan, that he used his Team Leader position to get a female co-worker who was working on the Highline job to provide him oral sex in the workplace parking lot.

v.     Francisco and other men made constant sexual references and comments about women and women's bodies in front of Sullivan.

vi.     Plaintiff and similarly situated women were sexually harassed when male co-workers bragged and joked about employees having sex on the Assembly Plant roof and about five men on the "C-Crew" sexually humiliating a female employee as part of a work-place "gangbang."

vii.     Plaintiff was offended when her Supervisor Mark, in her presence, lamented to other male co-workers that since the gangbang had been "found out", men would have to be more careful when they had sex with women at work.

viii.     Plaintiff was sexually harassed in August or September, 2012 when she worked side-by-side with a new female employee named Nicki in a position that required Sullivan and Nicki to bend inside of cars to install a part for a seatbelt.

ix.     UAW Representative Coby Millender and Ergonomics Manager Kevin "Red" Marshall stood behind Sullivan and Nicki starring at their bodies and making loud sexual comments that both Sullivan and Nicki could hear.

x.     Marshall asked Millender if Nicki was "the new ass you had been talking about?" and commented that Nicki had "a fat ass."

xi.     Millender responded "Yes, this is her right here. I'd like to take her [Sullivan's] tits and stick 'em on the new girl [Nicki]."

xii.     Marshall commented that he wanted to "fuck [Sullivan's] tits" and discussed with Millender various other sexual acts that he wanted to perform on Sullivan and Nicki.

xiii.     Between August, 2012 and November, 2012, Plaintiff repeatedly met with Labor Relations Representative Natalie Dahrenger, but Dahrenger only wanted to discuss a carpal-tunnel procedure Plaintiff had undergone and refused to discuss ongoing sexual harassment with the Plaintiff.

34

xiv.　The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

g.　<u>Derricka Thomas</u>: Plaintiff Derricka Thomas has been sexually harassed by offensive and unwanted touching and unwanted and offensive comments of a sexual nature, including but not limited to the following examples:

i.　Plaintiff has experienced repeated acts of sexual assaults and offensive touching including from her co-worker, John.

ii.　John repeatedly placed his hands on Plaintiff's waist and lower back and rubbed up against Plaintiff from behind.

iii.　John repeatedly told Plaintiff that he liked her buttocks.

iv.　John repeatedly told Plaintiff that he wanted to bite her buttocks.

v.　These comments were offensive and unwanted.

vi.　Plaintiff complained to her Team Leaders, including Quise and to her Supervisors that she was being sexually harassed at work.

vii.　Despite these complaints, Plaintiff's Supervisors permitted John to subsequently grab Plaintiff around the waist and bite her buttocks while she was bent over performing her job at Ford.

viii.　Plaintiff has further experienced sexual harassment when her Team Leader Quise seized Plaintiff's phone without her knowledge and forwarded pictures of Plaintiff to himself.

ix.　Team Leader Quise forwarded these pictures to other men throughout the plant.

x.　These pictures were private and personal and included intimate private pictures Plaintiff had taken of herself, with her boyfriend and infant child in which Plaintiff was wearing a bra.

xi.　Plaintiff was further sexually harassed when Team Leader Quise circulated provocative pictures of Plaintiff to other male employees in her department.

xii.　Plaintiff and other women have been sexually harassed by men leaving opened (and possibly used) condoms in and around her work area.

35

xiii.   On one occasion, male co-workers completely wrapped work equipment that Plaintiff and her female co-worker Tiffany used with a (possibly used) condom.

xiv.   Plaintiff and Tiffany complained about opened and possibly used condoms being left in their work area to Supervisor Robert Pryor, but Pryor laughed and thought it was funny.

xv.   Supervisors Mike Reese and Willie Fonseca frequently made sexually harassing comments to Plaintiff and other women.

xvi.   Supervisors Reese and Fonseca showed or attempted to show penis pictures to Plaintiff and female co-workers in Plaintiff's presence.

xvii.   The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

h.   <u>Nichea Walls</u>: Plaintiff Nichea Walls was sexually harassed when male supervisors and co-workers repeatedly made unwanted sexual comments and showed penis pictures to Plaintiff and similarly situated co-workers, including but not limited to the following examples.

i.   Supervisors Willie Fonseca and Mike Reese repeatedly made offensive, unwanted sexual comments to Plaintiff and similarly situated women.

ii.   Plaintiff was sexually harassed when Supervisor Fonseca showed her and other women a picture of his penis that he had taken with his phone.

iii.   Plaintiff was sexually harassed when male co-workers constantly preyed on her and similarly situated co-workers in her work area, including aggressive requests for sex or sex acts.

iv.   Plaintiff became extremely distressed when men pressured women to perform sex acts on them at work, including when she discovered men were pressuring women to have sex with them in the parking lot and when Plaintiff was informed that Superintendent Robert Devine pressured a Team Leader to perform oral sex with him on the roof of the Assembly Plant.

v.   Plaintiff and other women were further subjected to a hostile work environment and were demeaned when Union Chairman, Coby Millender belittled sexual harassment complaints and told women: "regarding the

36

sexual harassment suit, that's bullshit. I'm going to represent the company and keep that bullshit away from me."

    vi.   The foregoing incidents and others like them were pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

92.    Pervasive sexual harassment continues at Ford and the Plaintiffs that continue to work at Ford are still being sexually harassed by Supervisors that are aware of the pending lawsuit, including by way of example:

a.   In late 2015 or early 2016, Ford hired a new Supervisor at its Chicago Assembly Plant named "Charles" (last name unknown).

b.   Charles was assigned to supervise Plaintiff Maria Price.

c.   Supervisor Charles told Price that he was friends with one of Price's complained-of sexual harassers, Supervisor Dre Harris.

d.   Supervisor Charles told Price that he got the Supervisor job at Ford because he was friends with Harris and that he never applied for the job.

e.   Supervisor Charles told Price that Ford called him out-of-the-blue to work at Ford as a Supervisor in the Assembly Plant based solely on the recommendation of a known sexual harasser, Harris.

f.   When Charles met Price, he told her that he had read about this lawsuit, knew that Price was one of the original Named Plaintiffs, and told her he had discussed Price's allegations with other Supervisors, including Demario Petite.

g.   Supervisor Charles told Price that he believed all of her allegations as contained in this lawsuit and its exhibits.

h.   Supervisor Charles told Plaintiff "I believed everything I read when I saw how beautiful you were."

i.   In front of other employees Frank and Chuck (last names unknown), Supervisor Charles repeatedly asked Price on romantic dates and told her that he wanted to give her a massage and "I want to treat you special."

j.   Plaintiff Maria Price told Charles that she was not interested in dating him or any Supervisors or co-workers and that his requests were offensive and unwanted.

k. Supervisor Charles continued making unwanted requests for romantic relations to Price.

l. Plaintiff complained about Supervisor Charles to Labor Relations Representatives, including Catina McCoy and Anita O'Connor.

m. McCoy and O'Connor did not take prompt action to investigate Supervisor Charles' sexual harassment.

93. The sexually harassing conduct of which the Named Plaintiffs complain, was unwelcome, unwanted and non-consensual.

94. In addition to being sexually harassed themselves, the named Plaintiffs were subjected to a hostile working environment, in that they were forced to endure hostile working conditions in which other women were harassed, as more particularly described in other allegations of this Count.

95. Sexually harassing touching and other conduct was so pervasive and so widespread that the Named Plaintiffs and similarly situated women were constantly in fear for their own safety and of being touched.

96. Each of the incidents described in this Count were offensive and harassing to the Named Plaintiffs and similarly situated women who observed these occurrences and/or who heard other women complain about them.

97. The foregoing conduct is degrading, offensive and sexually harassing to the Named Plaintiffs and similarly situated women.

98. The types of sexually harassing behavior mentioned throughout this Count were experienced by the Named Plaintiffs and other similarly situated women on almost a daily basis.

99.     These instances of sexual harassment were continuous, severe and pervasive.

100.     Each of the incidents described in this Complaint were offensive and unwanted by the Named Plaintiffs and other similarly situated women.

101.     By being forced to endure, experience and/or observe the conduct alleged in this Count and elsewhere in the Complaint and Exhibits 1(a)-24(a), each of the Named Plaintiffs and other putative class members were subjected to a hostile working environment.

102.     These occurrences resulted in the Named Plaintiffs being sexually harassed and caused these women to suffer damage and emotional trauma.

103.     These occurrences are but several examples of events that happened with regularity at Ford to the Named Plaintiffs and contributed to a sexually harassing workplace environment which affected all of the Named Plaintiffs and their similarly situated female employees.

104.     This conduct created a dangerous workplace environment in which the Named Plaintiffs and similarly situated women do not feel safe.

**PLAINTIFFS COMPLAINED ABOUT SEXUAL HARASSMENT BUT
DEFENDANT FAILED TO TAKE PROMPT REMEDIAL ACTION**

105.     As a direct and proximate result of the foregoing acts of sexual harassment, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost time from work, have suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

106. The Named Plaintiffs and numerous similarly situated female employees repeatedly complained about sexual harassment during the Relevant Time Period by calling Ford's sexual harassment hotline, and making numerous reports to their supervisors, union, and Ford's Labor Relations and/or Human Resources department.

107. Ford failed to take prompt remedial action to stop sexual harassment in the workplace.

108. After the Named Plaintiffs and other similarly situated female employees complained about sexual harassment, male co-workers mocked their complaints and left behind spray-painted and chalk-marked graffiti depicting penises and testicles in the Complainers' work area and lunch area.

109. Male co-workers anonymously left totems of banana's sticking up in the air and symbols depicting penises in the complainers' work area, which were degrading to the Named Plaintiffs who experienced it such as Helen Allen and similarly situated sexually harassed women.

110. The above mentioned occurrences and numerous other occurrences like them, and Ford's failure to promptly take remedial action to stop these occurrences from continuing, resulted in the Plaintiffs being sexually harassed.

111. As a direct and proximate result of the foregoing acts of sexual harassment, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost time from work, have suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**COUNT 2**

**TITLE VII-GENDER/SEX DISCRIMINATION**
**(VAN, LEVIEGE, PRICE, ALLEN, BARRON, BOSAN, CAMPBELL, CARTER, DAHN, EXUM, GARDNER, GOFORTH, HARRIS, HENRY, JORDAN, KUDIRKA, LEWIS-BLEDSOE, MADISON, MILLER, MORRIS, SZOT, THOMAS-MOORE, R. THOMAS, WILLIAMS, CLYBURN, CORBIN, GLENN, HOOVER, LEDBETTER, SHANKLIN, SULLIVAN, D. THOMAS, WALLS, and all similarly situated women)**

112.   Plaintiffs adopt, reallege and incorporate by reference the allegations contained in paragraphs 1-111 of this Second Amended Complaint, as if set forth here.

113.   Plaintiffs and other women have been treated differently than their male counterparts.

114.   Plaintiffs and other women have been subjected to hostile working environment, sexual harassment, gender discrimination and discriminatory comments from supervisors and coworkers which males are not required to endure as a condition of their employment.

115.   Plaintiffs and other women have been given different work assignments than male counterparts and have been told that they are not being assigned to perform certain tasks "because they are women."

116.   Male supervisors have treated female restroom breaks as a significant delay in the production line, whereas male restroom breaks have been stereotypically viewed as shorter and having little or no impact on the speed of production.

117.   Thus, when females requested a restroom break, they have been denied that privilege much more frequently than their similarly situated male co-workers.

118.   By way of example, Constance Madison and her female co-worker Cherlonda Johnson occasionally requested restroom breaks but were denied that privilege by their

41

male Supervisors, including floor-manager Rob Kemp who frequently told Constance and other female employees that restroom privileges are "what the breaks are for."

119.    Madison witnessed Kemp and other male Supervisors including Team Leader Tyson frequently permit male employees to use the restroom during non-break periods.

120.    Plaintiffs and other women have been subjected to comments of a derogatory nature toward women, including that they are regularly referred to as "bitches", "hoes" and "sluts."

121.    Women are not viewed as equals, but rather as sexual objects at Ford.

122.    Being constantly exposed to unwanted sexual comments and discussion is offensive and degrades the Named Plaintiffs and similarly situated women.

123.    Females are treated differently than similarly situated male employees who are not required to endure sexual harassment as a term and condition of their employment.

124.    The Named Plaintiffs and numerous similarly situated female co-workers have complained to Ford's sexual harassment hotline and to the Labor Relations and Human Resources Departments about being exposed to a discriminatory, sexually harassing and hostile work environment.

125.    Ford has failed to stop and/or remedy this ongoing harassment, and male supervisors and employees continue to openly refer to women as "bitches" and to women who complain as "snitch bitches."

126.    Ford failed to promptly disciplined or reassign any males about whom Plaintiffs complained and did not conduct a thorough or timely investigation of Plaintiffs' complaints.

42

127.    Despite numerous prior lawsuits and the EEOC Conciliation Agreement, sexual harassment and sex/gender discrimination continues to be an everyday way of life at Ford.

128.    As a direct and proximate result of the foregoing acts of gender discrimination, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost or been deprived of income opportunities, have suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

## COUNT 3

### TITLE VII-RACE DISCRIMINATION
### (CHRISTIE VAN, CHARMELLA LEVIEGE, MARIA PRICE, HELEN ALLEN, MIYOSHI MORRIS, and all persons similarly situated)

129.    The Named Plaintiffs to this Count and their similarly situated African American employees ("Plaintiffs" for purposes of this Count) adopt, reallege and incorporate by reference the allegations in paragraphs 1- 82 as and for this paragraph.

130.    Plaintiffs adopt and incorporate by reference all allegations of sexual harassment and of a hostile work environment alleged in their respective EEOC Charges and Charge Outlines (Ex's. 1(A), 2(A), 3(A), 4(A) and 20(A)) as if set forth here.

131.    Plaintiffs are members of a protected Class based on their race: African American.

132.    Plaintiffs and other similarly situated African American employees have been subjected to different treatment on the basis of their race, African-American.

133.    This claim is brought under Title VII, 42 U.S.C. §2000e *et seq.*

43

134.     Plaintiffs and other similarly situated African American co-workers in the protected Class were discriminated against and subjected to a hostile work environment based on race in violation of Title VII of the Civil Rights Act.

135.     Plaintiffs and other similarly situated African Americans were discriminated against in the terms and conditions of their employment, including that they were subjected to lower quality job opportunities and fewer opportunities for raises, overtime and career advancement.

136.     Plaintiffs  and similarly situated African Americans have been denied the opportunity to work overtime based on their race/color (African American/black), even when the Plaintiffs and others have indicated a willingness to work overtime and/or have requested to do so.

137.     African American/black employees at Ford are assigned to lower quality work assignments than non-African American/black co-workers.

138.     Career opportunities at Ford are also more limited at Ford where most management positions are held by whites and most production and maintenance positions are held by blacks.

139.     Plaintiffs' white, similarly situated co-workers are given job assignments on certain lines that afford them desks, chairs and a computer that they are permitted to use during work breaks, whereas the Named Plaintiffs and other African American employees are not afforded similar conveniences.

140.     Plaintiffs and other similarly situated individuals have been given work assignments which are different and less desirable than white counterparts.

44

141.    Lighter skinned employees are also given preferential treatment to darker skinned employees.

142.    Various white team leaders and supervisors at Ford regularly made racially offensive references to Plaintiff and other African-Americans, including stereotypical and derogatory references to their hair, figures and clothes.

143.    Plaintiffs and similarly situated individuals have been subjected to name calling such as "nigger," "pickaninny" "shine," "buckwheat," "Aunt Jemima" and "Alfalfa."

144.    Because of Plaintiffs' race/color, Plaintiffs and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions and loss of overtime opportunities.

145.    Plaintiff and other similarly situated African Americans have been subjected to discrimination in discipline as well. Whites are not disciplined or are less severely disciplined for similar conduct.

146.    By way of example, Ford terminated Miyoshi Morris, claiming this was due to a paperwork issue associated with taking a bereavement leave.

147.    Another white employee who Ford claims was "terminated" at about the same time as Morris for the same reason as Morris was promptly reinstated and returned to work while Morris was not.

148.    Ford has returned Morris' white co-worker to work but refuses to reinstate Morris because of her race (black).

45

149. Because of their race/color, plaintiff and other similarly situated African American employees have been subjected to materially adverse employment actions, including unwarranted discipline, write-ups, suspensions, and loss of overtime opportunities.

150. Plaintiffs complained about this to Labor Relations to no avail.

151. Plaintiffs complained about this discrimination on Ford's hotline, but Ford did not promptly respond to stop ongoing racial discrimination.

152. After Plaintiffs complained about discrimination and harassment, they were regularly referred to by white co-workers and supervisors as "Black Snitch Bitch" – which was extremely racially offensive and derogatory.

153. As a direct and proximate result of the foregoing acts of racial discrimination, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost or been deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

## COUNT 4

### RACE DISCRIMINATION UNDER §1981
### (VAN, LEVIEGE, PRICE, ALLEN, CAMPBELL, CLYBURN, EXUM, MORRIS and all persons similarly situated)

154. The Named Plaintiffs to this Count and their similarly situated employees ("Plaintiffs" for purposes of this Count) incorporate by reference the allegations contained in paragraphs 1 through 82 and 129-153 of the Complaint and Plaintiff's charges of discrimination.

155. This claim is made under 42 U.S.C. § 1981.

46

156.    Plaintiffs are members of a racial minority (African-American).

157.    Defendant's treatment of the Plaintiffs and other African-American employees denied them of the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

158.    African American employees are forced to work under Supervisors that UAW representatives have identified are racist or are known for being racist.

159.    African American employees at Ford were subjected to a racially hostile workplace environment that provided white employees more favorable terms and conditions of employment. By way of example (and in addition to allegations contained in the Named Plaintiffs' EEOC Charges and incorporated by reference to Count 3 and this Count of this complaint),

a.  White employees are given preference in promotions, especially at Ford's Stamping Plant (where Van, Exum and Campbell continue to work and enure a racially hostile workplace environment).

i.  Hourly production line workers in Ford's Assembly and Stamping Plants are subject to the instructions of salaried Supervisors or Managers of various titles.

ii.  Ford promotes some hourly employees into lower-level managers roles, carrying titles of "Team Leaders" and "Utilities" (Utilities assist Team Leaders and serve in their place in their absence).

iii.  Reassignment to the positions of Team Leaders and Utilities are considered promotions, and are accompanied with increased levels of managerial responsibilities and wage increases and/or increased overtime opportunities.

iv.  Between 2012 and the present, Ford was short on "Utilities" in its Stamping Plant.

v.  Ford, through its white Supervisors, including Brad Swing and Roy Erdman trained Exum, Campbell and other African American employees

47

as "Utilities" and had them working for many months in that position in an "acting as" capacity.

vi. Ford promoted a white co-worker from the assembly line who had not been previously trained as a Utility named Kevin Clay into the Utility position over Plaintiff Campbell and other African American employees that had been trained for that position and who had been "acting as" Utilities.

vii. Ford did not officially promote Exum to a Utility position and did not pay Exum or Campbell the same hourly rate for similar work being performed by other white Utilities on their shift and in their department.

viii. Of approximately twelve (12) Utilities on First Shift, none were black.

ix. Eventually, Campbell was informed that if she wanted to work as a Utility, she needed to apply for an open Utility position on 3rd Shift – a less desirable shift.

x. Since moving to Third Shift, Campbell has experienced that white Supervisors Ed Smith and Mark Olsen repeatedly deny black female employees including herself and Deedee Perkins proportional overtime opportunities relative to similarly situated white employees.

xi. Smith and Olsen frequently given overtime to white male employee Octavia to perform Set-up Utility work, despite that his job classification is as a Schuler, because Campbell, Perkins and other African Americans would otherwise receive the overtime chance by virtue of being at the top of the Overtime Equalization list.

xii. Campbell and Perkins complained about this to Don Byers, but when Byers investigated, he found that Olsen admitted misclassifying Octavia to allow him overtime, but that Olsen refused to provide equal overtime opportunities to African American utilities.

xiii. In 2012 or 2013, Exum and other African American employees applied and interviewed for a promotion to "Team Leader."

xiv. Exum interviewed for the Team Leader position with white managerial personnel Steve Van Baber and Lisa Risinelli, and is aware that white Supervisor Roy Erdman was also involved in the selection process.

xv. Ford selected white male employee Michael Malone for the position over Plaintiff and several other African American candidates including but

48

not limited to Osiris Selby and Randall Willis who had more experience, more seniority and who had served in the role of Team Leader, even if only in an "acting as" capacity (as was the case with Exum).

xvi. Although Ford eventually promoted some African Americans to Team Leader positions including Exum, Selby and Willis, those promotions did not occur for several months, and there is still a great disparity between the number of white employees serving as Team Leaders and Utilities and the number of African American employees serving in those positions at Ford's Stamping Plant.

xvii. In 2015, Campbell and other African American employees applied for a promotion to "Team Leader."

xviii. Campbell was told she "did not have enough knowledge" and was not even interviewed for the position, however, Tracy Longtin, a white co-worker with less than one year of seniority and experience at Ford was promoted to that Team Leader position.

xix. At the Longtin was promoted to Team Leader (and as of the time Campbell and other African Americans were denied that promotion), only three of more than twenty Team Leaders and Utilities on First Shift at the Stamping Plant were African American, despite that Ford had a large population of African Americans eligible for such positions.

xx. Exum and other African Americans also applied for positions as "Supervisors."

xxi. Exum interviewed for the position with white Superintendent Lawrence and white Labor Relations Representative Keven Deake.

xxii. White employee Dan Lawrence was hired for the Supervisor position, despite that he had less experience, seniority and education than Exum and other African American applicants.

xxiii. After Exum was denied a promotion to Supervisor in favor of Dan Lawrence, Exum asked white Labor Relations Representative Rebecca why Lawrence was selected over her.

xxiv. Exum complained that Superintendent Lawrence hired Dan Lawrence to the Supervisor job merely because Dan Lawrence looked like Superintendent Lawrence.

49

xxv.   Rebecca denied this and told Exum that the Supervisor job required a college degree and thus, Superintendent Lawrence found Dan Lawrence to be more qualified.

xxvi.   Rebecca's explanation was based on a racial stereotype and was racially offensive to Exum, as Exum was more highly educated than Dan Lawrence and had a four-year Bachelor's degree, whereas Dan Lawrence merely had a two-year Associate's degree.

xxvii.   Ford failed to provide a valid business-reason for its selection of Dan Lawrence to Supervisor.

xxviii.  Since Exum's complaints, no other Supervisor positions have been openly advertised for African Americans at the Stamping Plant.

xxix.  However, Ford continues to hire/promote white co-workers to Supervisor positions.

xxx.   In late 2015 or early 2016, Ford hired a white female co-worker named Jennifer directly into a Supervisor position without any announcement that the position was available and without advertising an open application period, despite that she had less than two-years of experience working for Ford.

xxxi.  Plaintiff and other African American Team Leaders had more experience managing their respective departments in the plant.

xxxii.   Jennifer was given the privilege of a promotion over African American employees with more experience and education because she was white and because she was involved in a sexual relationship with upper level manager Brad Vis (white), which she openly admitted to co-worker Shenetta Cowgar.

xxxiii.  Plaintiff complained to Labor Relations Representative Kevin Deake about Jennifer's promotion being yet another example of promotional preferences being given to white employees who slept with upper level managers but Deake ignored Plaintiff's complaint.

b. Certain Supervisors at the Chicago Assembly Plant foster a hostile workplace environment toward employees of color.

i.   The UAW has received numerous complaints about Superintendent Chuck Nennert (white) treating white employees more favorably than African American employees.

50

    ii.  Indeed, UAW Representative Mark Allen has informed African American employees at Chicago's Assembly Plant to be careful around Superintendent Chuck Nennert who "is racist and known for being racist."

    iii.  Plaintiff Bernadette Clyburn (black) has repeatedly experienced working under Nenner, including Supervisors Zach Bozanick (white) and Alissa Millard (white) to permit white employees to take longer breaks than African American employees.

        1.  Upon complaining about this observation to these supervisors, Bozanick and Millard accused Clyburn of being "defiant" and subject her to increased performance scrutiny.

        2.  Bozanick and Millard do not permit Clyburn and other African Americans who observe and speak about obvious differences in the treatment of white and black employees to receive equal overtime as white employees and employees who do not complain.

c.  Between 2012 and the present, Ford has tolerated a racially discriminatory workplace environment in which symbols of racism are permitted to be posted and to remain in plain sight of African American employees.

    i.  A noose has been hung in the Stamping Plant in plain view of African American employees, including Exum and Campbell;

    ii.  Constant reminders of racism have been painted in the restroom and Campbell and other African American employees have been forced to endure these reminders. By way of example, these statements have included "Why did you hire all these niggers?" Despite numerous complaints, Ford permitted this particular statement to remain posted in the restroom for a substantial period of time.

d.  Racial (and sexist) epithets have been yelled by white employees toward black employees at both the Chicago Assembly and Stamping plants, including in Plaintiffs' presence.

    i.  Exum has witnessed white male employees angrily yelling at women, including Clay Kuesis distinguishing that African American women were "black bitches."

    ii.  Campbell has recently experienced a white employee named Larry yelling that an African American female Sharon Hawkins was a "black nigger bitch" while threatening to stab her with a screwdriver.

    iii.  Despite complaints of racism and workplace violence by Hawkins, Plaintiff and others, white Superintendent Roy Erdman permitted Larry to continue working that day and penalized him with only nominal discipline.

    iv.  White Supervisors subject African Americans to much higher discipline for lesser conduct, as was the case when Cory Hawkins (black) was terminated after being accused of raising his voice to a white Supervisor.

160.    These acts were done intentionally.

161.    As a result of the foregoing conduct, each of the Named Plaintiffs and other similarly situated employees has been denied equal rights and have been denied equal enjoyment of the benefits, privileges, terms and conditions of their employment.

162.    As a direct and proximate result of the foregoing acts of racial discrimination, each of the Named Plaintiffs and other similarly situated women have been damaged in that they have lost or been deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**COUNT 5**
**TITLE VII-RETALIATION**
**(CHRISTIE VAN)**

163.    The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and her EEOC Charges (Ex. 1(A) and 25(A)).

164.    Plaintiff repeatedly complained about an atmosphere of sexual harassment and racial and gender discrimination at Ford.

165.    Plaintiff complained numerous times to Labor Relations and to her Union about inappropriate gestures and remarks by supervisors and co-workers.

166.    Plaintiff complained that supervisors were inviting her to have sex with them and that she had been groped.

167.    One of Plaintiff's supervisors, Willie Fonseca responded by showing her a picture of his genital parts and said "You know you want it."

168.    The Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

169.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

170.    In retaliation for the Plaintiffs' numerous complaints and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.  On February 28, 2013, Van was assaulted and attacked from behind out of retaliation for complaining about sexual harassment and racial discrimination in the workplace.

      i.    One of the offenders or an individual on behalf of one of those offenders or on behalf of Ford physically assaulted and attacked Van as she was leaving work. She was thrown down to the ground from behind while walking to her car.

      ii.    Van's assailant stomped on the middle of her back, told her not to look at his face, told her that she was a "black snitch bitch" for complaining about sexual harassment, and told her that she better never come back to her job at Ford.

      iii.    The assailant threatened Van that he knew where she lived and would kill her if she came back.

      iv.    Van complained to her union and to Labor Relations about this incident but Ford never investigated this incident.

b.  Van has been called "black snitch bitch" by supervisors and co-workers.

c.  Human Resources Manager/Supervisor, Terrence McClain intimidated and berated Plaintiff for talking about sexual harassment in the workplace with other co-workers and with non-Ford employees outside of the workplace.

      d.     McClain, in an aggressive manner told Van: "I don't know what they did where you came from, but you are at Chicago Assembly now and you need to realize that things are run much differently here.

           i.     McClain did not want sexual harassment investigated because he was also sexually harassing women in the workplace, including but not limited to:

                1.  exposing his penis to women at work;

                2.  sexually assaulting and touching women in unwanted sexual ways;

                3.  staring at women in an uncomfortable way; and

                4.  making offensive and unwanted comments to women on a regular basis.

      e.  McClain told Plaintiff "You need to forget the incident that happened and need to let it go. Or else!"

      f.  Labor Relations Specialist, Alex Keweny was present when McClain intimidated and berated and threatened Plaintiff but did nothing about it.

      g.  On subsequent occasions, Keweny reinforced that Plaintiff needed to stop complaining as she had been instructed by McClain.

      h.  Keweny required Van to continue to work wither her harassers, including under her harassing supervisors.

i.   Meanwhile, other personnel in Labor Relations told Plaintiff's Union Chairman that she would be fired unless she stopped complaining or dropped her EEOC charge.

j.   Reese, one of Plaintiff's direct supervisors dismissed Plaintiff from her work assignment on one or more occasions in retaliation for reporting his sexual harassment and for filing an EEOC charge against him.

k.   Fonseca, one of Plaintiff's direct supervisors assigned her to lower quality job assignments and continued to harass her in a threatening way in retaliation for reporting his sexual harassment and for filing an EEOC charge against him.

l.   Dazman Gray, one of Plaintiff's direct supervisors and his fiancé, Ashley Lowe, one of Van's shift supervisors falsely accused Plaintiff of violating a safety rule and had her written up and suspended for a day without pay in retaliation for Plaintiff complaining that Gray had sexually harassed her the previous week.

m.   The EEOC attempted on at least three occasions to mediate her Charges of Discrimination.

n.   When Plaintiff refused to accept Ford's offer, Ford terminated Van's employment effective May 28, 2014 – just days after the EEOC's most recent attempt at mediating this matter proved unsuccessful.

56

o. Plaintiff was forced to grieve her termination and Ford's refusal to return her to work to arbitration. The arbitrator ruled in Plaintiff's favor after a hearing on the merits.

p. Only after the arbitrator ruled in Plaintiff's favor, Ford transferred Van to the Stamping Plant and returned Plaintiff to work, but Plaintiff continued to subject her to heightened scrutiny and more dangerous workplace conditions than are afforded other employees who did not complain.

170. Since transferring Plaintiff to the Stamping Plant, Ford continued to retaliate against Van for complaining about sexual harassment, including:

a. Ford subjected Plaintiff to heightened scrutiny and "birddogged" Plaintiff with supervisors specifically watching her performance for any nominal reason to write her up.

b. Plaintiff's supervisors have failed to provide Plaintiff adequate training in the jobs to which she was assigned, and then criticized and overly scrutinized Plaintiff's performance;

c. on at least one occasion, Supervisor Dan Lawrence, at the instruction of Labor Relations Supervisor Mary Goldberg, forced Plaintiff to remain at work without pay;

d. Plaintiff was subjected to ridicule from other employees who openly called her "the black bitch who filed a lawsuit."

e.  Plaintiff was forced to work in the most dangerous job assignments in which OSHA-prescribed safety measures were not in place, in order to subject Plaintiff to increased risk of becoming injured;

f.  Plaintiff has been forced to work with known violent co-workers.

g.  Ford took no corrective action after Van complained about a forklift driver, Rob Diver, operating his machine negligently and endangering workers.

h.  After Plaintiff complained, Diver intentionally attempted to run Van down using his forklift.

i.  Plaintiff complained about this intentional attempt to cause her severe bodily harm and also filed a police report against Diver's assault.

j.  Ford did not obtain a Protective Order for Van's benefit under the Illinois Workplace Violence Protection Act.

k.  Instead of taking corrective measures against workplace violence, Supervisor Brad Swing ordered Van to continue working directly with Diver and told her that if she refused, she would be disciplined and suspended without pay.

l.  Instead of taking corrective measures, Ford informed Plaintiff's union representative that she would be terminated if she continued to complain.

m.  The union representative told Plaintiff that Ford is "coming after you" and "be careful."

n.  As recently as March, 2016, Plaintiff received retaliatory threats at her home. A dead rat was been placed on the doormat on Plaintiff's front porch, suggesting to Plaintiff that she is a "rat" for complaining about sexual

58

harassment and discrimination and sending her the threatening message that "rats get killed."

o. As recently as April, 2016, after Plaintiff continued complaining about sexual harassment and retaliation and informed Supervisors that she was even being threatened at her home, Human Resources Manager Anita O'Connor accused Plaintiff of creating a hostile work environment.

p. O'Connor blamed Plaintiff that Plaintiff was "too aggressive" in complaining about sexual harassment and retaliation and thus, it was her fault other employees became upset and threatened Plaintiff by placing a dead rat on Plaintiff's porch.

q. O'Connor told Plaintiff that Plaintiff was "aggressive" when Plaintiff complained about retaliation, including perceived threats on Plaintiff's life, health or physical safety.

r. O'Connor told Plaintiff that Ford was performing an "ongoing investigation" into Plaintiff being "too aggressive" when Plaintiff complained to Supervisors and HR about sexual harassment and ongoing retaliation, including when she complained that a dead rat was left on her porch.

s. O'Connor threatened Plaintiff with discipline as a possible result of the investigation, and told Plaintiff that she could be suspended or terminated as a result of her "aggressive" complaints.

171. Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

59

172. Plaintiff's complaints and her filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

173. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 6
## TITLE VII-RETALIATION
## (CHARMELLA LEVIEGE)

174. The Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

175. Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

176. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

177. In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

a. repeatedly assigning unfair discipline against Plaintiff in an effort to write her up;

b. reassigned her to different job assignments that did not match her medical restrictions.

60

c.   sent Plaintiff home early for the remainder of a shift without pay;

d.   denied Plaintiff overtime opportunities that were otherwise offered

to employees who did not complain.

178.   Ford's retaliatory acts deprived Plaintiff of the other financial opportunities Ford offers to employees who did not complain about sexual harassment or racial discrimination.

179.   Ford's retaliatory acts against plaintiff constitute materially adverse employment actions.

180.   Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

181.   As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 7
## TITLE VII-RETALIATION
### (MARIA PRICE)

182.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

183.   Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

184.   Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable,

and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

185.    Supervisor Alex Curry told Plaintiff after she complained that he and Plaintiff's supervisors at Ford are "tired of hearing your name" and are "trying to set you up." Thereafter, Supervisors retaliated against her.

186.    In retaliation for the Plaintiff's numerous complaints and for filing EEOC charges and this lawsuit, Ford retaliated against this Plaintiff in the following ways:

    a.  repeatedly assigned unfair discipline against Plaintiff in an effort to write her up, including:

        i.    disciplining Plaintiff based on a claim that she was thirty (30) minutes late even though she was at work on time;

        ii.    disciplining Plaintiff for being "late" when she was actually early for work but was in Ford's medical department being evaluated by a nurse.

        iii.    disciplining Plaintiff based on a claim that she "walked off the job" because she did receive permission to use the restroom;

            1.  This was despite that Plaintiff informed her Supervisor and Team Leader more than two hours earlier that she needed to use the restroom;

    b.  denied Plaintiff restroom breaks that were allowed to other employees who did not complain;

c. denying Plaintiff for three-days-worth of pay, claiming she was "absent-without-leave" even though she was at work and worked each of those days;

d. suspended Plaintiff and/or sent Plaintiff home early without pay for allegedly being late to work, when she was actually on time for work but was receiving medical attention from a nurse in the medical department at the time her shift began;

e. denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain;

f. Supervisor Demario Petite (a cousin of sexual harasser-Superintendent Ben Anderson) was assigned to supervise Plaintiff and repeatedly marked Plaintiff late when she was on time and threatened to write her up for being slow.

g. Supervisor Petite did not constantly threaten to write-up non-complaining employees.

h. Plaintiff has been informed that one of her complained-of sexual harassers, Jabari Muse has likely taken a "hit" out on her.

i. Plaintiff has complained about her concerns of retaliatory violence at work and that the area to which she is assigned has a high concentration of gang-affiliated employees.

Plaintiff has informed Ford of these threats of violence but Ford has not taken any noticeable steps to permanently reassign

63

Plaintiff away from gang-infested areas of the plant or to otherwise ensure that she will not be violently assaulted.

i.   Plaintiff has informed Human Resource Manager Anita O'Connor of specific persons that Plaintiff believes are possible violent threats.

j.   Ford has not taken out a Protective Order for the benefit of this Plaintiff as it is permitted to do pursuant to the Illinois Workplace Violence Prevention Act.

187.   Ford's retaliatory acts deprived Plaintiff of the other financial opportunities Ford offers to employees who did not complain about sexual harassment or racial discrimination.

188.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

189.   Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

190.   As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 8**
**TITLE VII-RETALIATION**
**(HELEN ALLEN)**

191.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and Plaintiff's EEOC Charge.

192.    Plaintiff and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

193.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

194.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

    a.    Disclosing to Other employees who did not have the need-to-know that Plaintiff Complained of discrimination, including:

        i.    Labor Relations representative Natalie Dahrenger held a meeting with Plaintiff's male co-workers and "outed" Plaintiff or allowed others to "out" Plaintiff as the complainer.

        ii.    Ford employee and union Building Chairman Coby Millender told approximately 200 union members that Plaintiff was the complainer who had "filed a sexual harassment lawsuit against Ford."

iii.    After these two incidents in which both Ford and the Union

Chairperson, Millender disclosed Plaintiff as being the

"complainer," she experienced numerous anonymous acts of

vandalism in her work area and lunch area depicting

penises/phalluses and testicles, all meant to mock Plaintiff and

make her feel even more harassed and humiliated.

b.    After Plaintiff complained to Ford, Jim Larese, a senior manager

overseeing the plant told his immediate staff to "be careful around Helen

because she's filing a lawsuit against Ford."

c.    repeatedly assigning unfair discipline against Plaintiff in an

effort to write her up;

d.    denied Plaintiff restroom breaks that were allowed to other

employees who did not complain;

e.    suspended Plaintiff and/or sent Plaintiff home early without pay;

f.    denied Plaintiff overtime opportunities that were otherwise

offered to employees who did not complain.

195.    Ford's retaliatory acts against Plaintiff constitute materially adverse
employment actions.

196.    Plaintiff's complaints and her filing of this lawsuit led to or were a major factor
in the adverse employment actions she suffered.

197.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff
has been damaged in that she has lost or been deprived of income opportunities, has

suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 9
## TITLE VII-RETALIATION
### (Jacqueline Barron)

198.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and Plaintiff's EEOC Charge.

199.    Barron and other similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

200.    Supervisors have gone out of their way to make the Barron's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Barron and others who complained about sexual harassment and discrimination subject her to increased scrutiny and/or discipline.

201.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against Barron in the following ways:

a.  After Plaintiff refused her supervisors' requests for sex, she was denied restroom breaks.

b.  Although nothing was being done to remedy her complaints, one of Barron's co-workers tipped Barron off to "watch her back" because her supervisors had informed Kendall Brooks that she had complained.

i.    Barron was told that Brooks intended to physically harm her for complaining about his constant unwanted touching, groping, lewd comments and unwanted penis pictures and invitations for sex.

67

ii.     In November or December, 2012, Plaintiff complained to Natalie

Dahrenger at Labor Relations, but Dahrenger did not respond or listen to

the details of Barron's sexual harassment and told Barron to report back

to work.

iii.    Barron asked Labor Relations to reassign her to an area of the plant

away from sexual harassment and threats of physical violence.

1.   Dahrenger told Plaintiff she would contact her "within 24 hours"

and let Plaintiff know what Ford could do to remedy the situation.

2.   Barron waited for Dahrenger's call, and when it did not come,

Barron again tried contacting Labor Relations to determine when

she would be returned to work away from her sexual harassers.

3.   Dahrenger failed and refused to return Plaintiff to work.

c.   Barron contacted the EEOC and complained about ongoing sexual

harassment and discrimination in early December, 2012.

d.   A month later, January 15, 2013, Ford terminated Barron in retaliation

for complaining and filing an EEOC Charge.

e.   Ford has refused to rehire Barron and has refused to return Barron to

work.

202.    Ford's retaliatory acts against Plaintiff constitute materially adverse

employment actions.

203.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor

in the adverse employment actions she suffered.

68

204.   As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 10**
**TITLE VII-RETALIATION**
**(THERESA BOSAN)**

205.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

206.   Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

207.   After Plaintiff complained to Labor Relations about Supervisor Jeff Bivens sexually harassing, another Supervisor named Bob (last name unknown) warned Plaintiff that Bivens intended to retaliate against her and terminate her position.

208.   A Superintendent named Akili similarly approached Bosan and warned her that being petite would not benefit her at Ford because some Supervisors targeted petite women like her as they were more likely to become sexual harassment victims and complainers.

209.   After Plaintiff was sexually harassed, she complained to Supervisor Peggy and to Labor Relations.

210. After complaining, Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

211. In retaliation for the Plaintiff's engaging in protected activity and making numerous complaints against sexual harassment and discrimination, Ford has retaliated against this Plaintiff in the following ways:

a. After Plaintiff refused her supervisors' requests for sex and complained about sexual harassment, she was unfairly disciplined.

b. Supervisor Bivens and Superintendent Chuck Nennert assigned Bosan to the most physically demanding job assignments knowing that she was too small to perform the job and that she was required to stand on her tippy-toes in order to do it, and then criticized Plaintiff for not being able to sufficiently perform the job.

c. Bivens and Nennert used this same technique to retaliate against other women who spurned and complained about Bivens' sexual advances, including LaDwyna Hoover.

d. After Bivens assigned Bosan to a job which was impossible for her to effectively perform, Kevin "Red" Marshall, the ergonomics specialist at Ford's Assembly Plant, told Bosan "We're not supposed to tell you this, but not all jobs

are for women who are as small as you. This one is not for you. You are too little."

     e.  Union representative, Mark Allen told Bosan that not only was her job assignment retaliatory and intentional on the part of Jeff Bivens, but that Nennert condoned Bosan being placed on a physically difficult job because it might get her to quit.

     f.  Mark Allen stated that it was widely known that "Chuck has it out for you because of your complaining on his supervisors."

     g.  When Bosan refused to quit, Ford terminated her in retaliation for her complaining about sexual harassment.

     h.  Ford has refused to reinstate Bosan or return Bosan to work.

212.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

213.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

214.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 11**
**TITLE VII-RETALIATION**
**(SHRANDA CAMPBELL)**

215.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

216.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

217.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

218.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

a.   repeatedly assigning unfair discipline against Plaintiff in an effort to write her up;

b.   After Plaintiff complained about being sexually harassed by Rich Murray, Murray told Plaintiff "you aren't running the line anymore";

c.   Although Plaintiff had been "acting as" a Utility (a lower level managerial position) and was due for a raise and official promotion in title, Murray refused to officially promote Plaintiff;

d.   Murray demoted Plaintiff from working as a Utility and reassigned her back to a non-managerial position on the production line;

e.   sent Plaintiff home early for the remainder of a shift without pay;

f.   denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain.

219.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

220.   Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

221.   As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 12**
**TITLE VII-RETALIATION**
**(KETURAH CARTER)**

222.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

223.   Plaintiff and other similarly situated individuals have been retaliated against for refusing and complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

224.   Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

73

225.    In or about late 2013 or early 2014, Plaintiff complained to Labor Relations Representative Natalie Dahringer both verbally and in writing about favorable treatment being given to male employees in the workplace and about sexual harassment by males against females in her department.

226.    Plaintiff complained about numerous specific events of sexual harassment and discrimination to Ford's sexual harassment hotline and to Labor Relations again in or August and September, 2014.

227.    In her complaints to Labor Relations and subsequently to the EEOC, Plaintiff complained of specific sexually harassing and retaliatory actions by Supervisors Ken Perry and Geraldo "Dre" Harris and Team Leader Marvin Jones and other male employees.

228.    At least by November, 2014, Plaintiff cooperated with the UAW's Civil Rights Committee's investigation into sexual harassment at Ford, despite that her Supervisors did not want her freely speaking about sexual harassment against them.

229.    After Plaintiff complained and because Plaintiff complained, Supervisor Ken Perry suspended Plaintiff and/or sent Plaintiff home early without pay for allegedly being "late", when she was actually on time for work but was receiving medical attention from a nurse in the medical department at the time her shift began.

230.    In retaliation for the Plaintiff's numerous complaints and because Plaintiff filed charges of discrimination with the EEOC, Ford retaliated against and continues to retaliate against this Plaintiff in the following ways:

        a.  From late 2014-present, Supervisor Geraldo "Dre" Harris, a
        complained-of sexual harasser, repeatedly had open conversations in front of

74

other employees, bragging to Team Leader Jeff Tucker that he is going to have

Plaintiff terminated or "get [her] out of there";

b.  Harris subjected Plaintiff's work relative to increased scrutiny

employees that have not complained;

c.  Harris repeatedly threatened that he is going to find a reason to

declare that there is "no work available" for Plaintiff;

d.  Harris threatened and attempted to write Plaintiff up for going "too

slow" even though she was operating at the same pace of the moving assembly

line.

e.  Harris did not threaten to write-up non-complaining employees.

f.  By docking Plaintiff's pay.

231.  Supervisors Perry and Harris subjected Plaintiff to increase scrutiny and

repeated and threatened discipline because Plaintiff repeatedly complained of sexual

harassment by them and other male employees from at least late 2013 or early 2014-

present.

232.  Ford's retaliatory acts deprived Plaintiff of financial opportunities Ford

offered to employees who did not complain about sexual harassment or discrimination.

233.  Ford's retaliatory acts against Plaintiff constitute materially adverse

employment actions.

234.  Plaintiff's complaints and the filing of this lawsuit led to or was a major factor

in the adverse employment actions she suffered.

235.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

236.    The EEOC investigated illegal retaliation with respect to this Plaintiff and determined there was reasonable cause to believe she was subjected to illegal retaliation. (Ex. 8(C)).

## COUNT 13
## TITLE VII-RETALIATION
### (MICHELLE DAHN)

237.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

238.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

239.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

240.    In addition, Ford has retaliated against Plaintiff for her protected activity in complaining about sexual harassment in the following ways:

    a.  After Plaintiff refused her supervisors' requests for sex and complained about sexual harassment, she was unfairly disciplined, suspended without pay, and subsequently terminated.

76

     i.    When Plaintiff attempted to complain, she was told that she should not complain about the men involved in sexually harassing or disciplining her.

    ii.    When Plaintiff suffered severe emotional distress and had to take a medical leave, Ford terminated her on the false excuse that she failed to submit certain paperwork, even though she had submitted the appropriate paperwork.

b.  When Plaintiff again complained of this continued harassment and retaliation to Coby Millender, he promised that he could correct the problem and get her back to work, but subsequently refused to have her returned to work unless and until she agreed to have sex with him, which she refused to do.

c.  As a result, the Plaintiff has been terminated and has not been put back to work because she refused her supervisor's sexual advances and complained about sexual harassment.

d.  Plaintiff continued complaining to Ford and subsequently the EEOC about these issues. Thereafter, Plaintiff observed strange vehicles surveilling her house, which upon information and belief are Ford employees or agents stalking her in retaliation for her complaining.

e.  Ford has refused to reinstate and return Plaintiff to work.

241.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

242.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

243.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

### COUNT 14
### TITLE VII-RETALIATION
### (TONYA EXUM)

244.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charges (Ex. 10(A) and 26(a)).

245.     Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

246.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

247.     In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

           a.  denying Exum promotional opportunities to Supervisor and in favor of another employee who did not complain about sexual harassment, but who was instead having sex with an upper level manager;

78

b.  denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain;

c.  After Plaintiff refused her supervisors' requests for sex and complained about sexual harassment, she was unfairly disciplined and stripped of her "Utility" job duties, which negatively impacted her opportunity for promotions, raises and overtime.

248.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

249.   Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

250.   As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 15
## TITLE VII-RETALIATION
## (JEANNETTE GARDNER)

251.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

252.   Plaintiff and similarly situated individuals have been and continue to be retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

253.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

254.    In retaliation for the Plaintiff's numerous complaints, for helping other women complain about sexual harassment and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.    Plaintiff was physically and sexually assaulted by her Superintendent, Myron Alexander – one of the men who was sexually harassing her female co-workers -- who demonstrated in front of other Supervisors that women should be "put in their place and should not be allowed to complain;

b.    Plaintiff was unfairly disciplined;

c.    Plaintiff has been blackballed from promotional opportunities and denied substantial economic opportunity.

i.    Ford refused to interview Plaintiff when she applied for a promotion to a Sr. Process Coach – a promotion that would have included increased pay and managerial responsibilities.

ii.    Instead of promoting Plaintiff, Ford promoted employees who "toed the company line" and did not complain or encourage others to complaint of sexual harassment, including Jeff Bivens, a complained-of sexual harasser at Ford.

80

255. Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

256. Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

257. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 16
## TITLE VII and ADA-RETALIATION
### (ARLENE GOFORTH)

258. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

259. Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

260. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

261. In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in one or more of the following ways:

a.   Plaintiff could not perform a job requiring that she bend over frequently and repeatedly because it caused her to become extremely dizzy. This was a disabling residual side-effects from a previous cancer surgery (an equilibrium imbalance).

b.   Plaintiff informed Ford of her equilibrium imbalance and was granted a restriction that permitted her to be placed in a job that did not require frequent or repetitive bending over.

c.   However, after Plaintiff refused her supervisors' requests for sex and complained about sexual harassment and discrimination, she was reassigned from a job position that she was capable of performing to a job that violated her restrictions and required her to frequently bend over, exacerbated her disabling conditions, and resulted in her becoming disoriented, dizzy and falling and injuring her head.

d.   In retaliation for Plaintiff complaining about sexual harassment and gender and disability discrimination, Ford refused to have Plaintiff placed back in a position that she could perform in an upright position which matched her disability restrictions.

e.   In retaliation for Plaintiff complaining to the EEOC about gender and disability discrimination and sexual harassment, Ford laid Plaintiff off without pay, claiming there "no work available."

f.   Similarly situated employees who did not complain continued to be employed.

82

g.  Ford hired non-complaining employees into positions in that

Department and work area which did not require frequently bending over

and standing back up, proving that there was "work available" that Plaintiff

could perform.

h.  Ford has failed to reinstate Plaintiff.

262.    Ford's retaliatory acts against Plaintiff constitute materially adverse

employment actions.

263.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor

in the adverse employment actions she suffered.

264.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff

has been damaged in that she has lost or been deprived of income opportunities, has

suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical

or psychological injuries.

## COUNT 17
## TITLE VII-RETALIATION
## (CHRISTINE HARRIS)

265.    Plaintiff incorporates by reference the allegations contained in paragraphs 1

through 128 of the Complaint and in her EEOC Charge.

266.    Plaintiff and similarly situated individuals have been retaliated against for

refusing and complaining against sexual advances, comments, innuendo, and lurid foul

and offensive language and for requesting reasonable accommodations under the ADA.

267.    Supervisors have gone out of their way to make the Plaintiff's job more

difficult, have made it clear that they were going to make her life in the plant miserable,

and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

268.    In retaliation for refusing her supervisor's requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.  Plaintiff initially complained to Union Representative Mark Allen and her Supervisor, Brendon regarding Team Leader Tony's sexual harassment.

b.  Allen and Brendon told Plaintiff not to complain and not to go to Labor Relations because "Ford doesn't care about workplace conditions, especially for new people" and "Ford only cares about the bottom line."

c.  Allen and Brendon told Plaintiff that she was a probationary employee and that complaining would get her fired;

d.  Plaintiff complained to Labor Relations regarding Team Leader Tony's sexual harassment and that Supervisor Brendon failed to do anything to stop it.

e.  In mid-August, 2014, after Plaintiff complained to Labor Relations, Brendon assigned Plaintiff to a more difficult position in which Plaintiff had not received adequate training.

f.  Brendon refused to allow other employees to train Plaintiff on the new job.

g.  Brendon then criticized Plaintiff for not doing the job correctly, even though she had not been trained on how it was supposed to be performed.

h.  In further retaliation for Plaintiff complaining against Team Leader Tony, Plaintiff was forced to continue working under Tony and forced to endure his new "nickname" for Plaintiff which was "Bitch."

i.  Team Leader Tony further retaliated against Plaintiff by telling other co-workers that she was a "complainer" and could not be trusted, creating unbearable changes in Plaintiff's job conditions that constituted a hostile work environment.

j.  Several days after Plaintiff complained to Labor Relations regarding sexual harassment and retaliation, Ford terminated Plaintiff, causing her substantial lost economic opportunity.

k.  Plaintiff requested that the UAW help her file a grievance, but the UAW informed her that it provides no assistance to probationary employees and thus, that Ford requires probationary employees to endure sexual harassment to earn full-time, non-probationary status.

l.  Ford has refused to reinstate Plaintiff and return her to work.

269.   Ford's retaliatory acts against Plaintiff, including termination constitute materially adverse employment actions.

270.   Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

271.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 18**
**TITLE VII and ADA-RETALIATION**
**(ORISSA HENRY)**

272.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and of her EEOC Charge.

273.    Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language and for requesting reasonable accommodations under the ADA.

274.    Supervisors have gone out of their way to make Plaintiff and other similarly situated individuals' jobs more difficult, have made it clear that they were going to make their jobs more difficult and their life in the plant miserable, and have taken extra measures to make the performance of the Plaintiff's and other similarly situated individuals' job duties more difficult and/or to subject them to increased scrutiny and/or discipline.

275.    In retaliation for the Plaintiff's numerous complaints and requests for a reasonable accommodation, and for filing charges of sexual harassment and discrimination with the EEOC and for bringing this lawsuit, Ford has retaliated against this Plaintiff in the following ways:

        a.  Ford disciplined, suspended without pay and laid Plaintiff off claiming there was "no work available", whereas similarly situated employees who also

86

had a restriction for "rest every two-hours" that did not complain about sexual harassment and discrimination were not similarly disciplined and were not suspended without pay or laid-off.

b. Denied placement on a job that fit her restrictions (brief periods of rest at least every two hours for her fibromyalgia);

c. Since filing this lawsuit, Plaintiff has attempted to return to work on multiple occasions, but Labor Relations Representative Catina McCoy refused to discuss reasonable accommodations and refused to return Plaintiff to work and denied Plaintiff substantial economic opportunities.

276. Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

277. Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

278. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 19
## TITLE VII-RETALIATION
## (LAWANDA JORDAN)

279.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

280.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

281.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

282.    Beginning in at least 2013, Plaintiff complained about sexual harassment and discrimination during meetings with Labor Relations Representative Natalie Dahrenger and UAW Representative Will Jackson.

283.    Plaintiff complained about numerous sexually harassing male Supervisors and co-workers, including but not limited to Supervisor Buck Owens, Pierre Hawkins and Ken Perry.

284.    Plaintiff verbally complained that she was highly offended by sexual vulgarity in the workplace, including that Supervisor Buck Owens told her how she made him "hot and horny" and that Relief Personnel Pierre Hawkins told her she had "nice juicy titties" and a "pretty pussy print."

285. Will Jackson and Dahrenger admitted they had been aware of Buck Owens' and Pierre Hawkins' sexually harassing conduct, saying "that's just Buck" and that Pierre "has no filter."

286. Ford did not take any noticeable immediate action to remedy this ongoing sexual harassment.

287. Thus, Plaintiff continued to complain verbally to numerous Labor Relations representatives including Dahrenger, Alex Keweny and Terry (it is believed Terry's last name is Gueyser).

288. Between 2013 and the present, Plaintiff also complained about continuing sexual harassment, retaliation and workplace danger in writing on at least five separate occasions between 2014 and 2016.

289. In retaliation for complaining against her supervisor's sexual harassment and for filing charges of discrimination with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a. Pierre Hawkins was the relief person who had lower-level supervisory responsibilities, including relieving production line employees who needed a restroom break.

b. After Plaintiff complained about Hawkins' sexual harassment, Hawkins repeatedly referred to Plaintiff as the "bitch who complained" about him in front of other co-workers and Supervisor Ken Perry.

89

c. Pierre Hawkins refused to permit Plaintiff to use the restroom while employees who did not complain continued to receive regular restroom breaks.

d. Hawkins threatened Plaintiff, telling her "I can say whatever the fuck I want to you."

e. When Plaintiff complained to another Supervisor, Ken Perry about continuing retaliation, he told Plaintiff he was not going to do anything to stop retaliation, sexual harassment or discrimination.

f. After Plaintiff complained to Perry, he refused to permit Plaintiff access to the restroom, even though employees who did not complain were permitted restroom breaks.

g. After Plaintiff complained about Supervisor Buck Owens' sexual harassment, Superintendent Townsly specifically assigned Plaintiff to continue working under the direct supervision of Owens even though Plaintiff complained about how her presence sexually aroused Owens.

h. This was despite that Labor Relations Representative Terry Geuyser told Plaintiff that such an assignment was improper based on the "still-open investigation" regarding Owens' sexual harassment.

i. Such a job assignment was particularly humiliating and unbearable, given that Plaintiff's presence noticeably sexually aroused Owens, causing him to fondle his penis in front of Plaintiff – which itself, served as continuing sexual harassment of the Plaintiff.

      j.   Plaintiff's Supervisors continue to intimidate Plaintiff from reporting workplace discrimination and retaliation, such that Supervisor Andrew has followed Plaintiff to the restroom when she takes restroom breaks just to make sure she is not going to the Labor Relations office to make more sexual harassment complaints.

290.   After Plaintiff complained about sexual harassment, she experienced each of the aforementioned unbearable changes in job conditions which constituted a hostile work environment.

291.   Since complaining, Plaintiff has consistently been denied overtime opportunities even though she was low on the overtime equalization list within her department, classification and shift.

292.   Since Plaintiff complained about discrimination and sexual harassment, Plaintiff has been denied substantial overtime opportunities, causing her substantial lost economic opportunities.

293.   Since Plaintiff complained, Plaintiff is only granted overtime opportunities when Ford requires that all employees on the B-Crew shift work overtime – known as a "mandatory Saturday."

294.   Employees that did not complain about discrimination or sexual harassment were consistently given overtime opportunities instead of Plaintiff.

295.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions, in that they collectively constitute unbearable changes in

Plaintiff's job conditions and a pervasively hostile work environment that Plaintiff is forced to endure but that is not forced upon employees who do not complain.

296.    Plaintiff's complaints were the major factor giving rise to Plaintiff being subjected to a pervasively hostile work environment.

297.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

298.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 20
## TITLE VII-RETALIATION
### (DANIELLE KUDIRKA)

299.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

300.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

301.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

302.    In retaliation for refusing her supervisor's requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination with the Illinois Department of Human Rights and the EEOC, Ford retaliated against this Plaintiff in the following ways:

a.   Plaintiff was instructed by Labor Relations Representative Natalie Dahrenger that due to her obvious emotional distress suffered from sexual harassment, Plaintiff should go on a "stress leave", apply for part-time disability benefits and effectively take a substantial reduction in income.

b.   Plaintiff was unfairly disciplined.

c.   Plaintiff was denied substantial overtime opportunities that other employees who did not complain continued to receive.

d.   Plaintiff was denied favorable job assignments, including:

i.   Plaintiff is a "General Utility", meaning that she is supposed to be trained on all of the jobs in her department and assigned to work or help out as needed on any departmental job.

ii.   Plaintiff has worked as a General Utility for years.

iii.   Since Plaintiff complained about sexual harassment, her Supervisors have refused to train her on the six most desirable jobs in her department.

iv.   Plaintiff's supervisors have refused to train her on the "Water Repair", "Hunter/Tire Inspection", "Clerk" or "FCPA" jobs.

v.   Plaintiff has only received two-hours of training on the "CBT Repair" and "Export Inspection" jobs.

vi.    The aforementioned jobs are "off-line" jobs which are not directly tied to the moving assembly line.

vii.    Working in these jobs is deemed safer as they are "off the line."

viii.    Working in these jobs is more desirable as an employee is able to work at his or her own pace and is not subject to the "pace of the line."

ix.    Although Plaintiff's job classification identifies that she should be trained on these jobs, she has been singled out, remains untrained on these jobs and has not been allowed to perform these jobs as have her similarly situated co-workers that have not complained.

e.  Similarly situated "General Utilities" in Plaintiff's department that did not complain about discrimination or sexual harassment were consistently trained on all job assignments within the department and more frequently placed in the more desirable job assignments.

303.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

304.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

305.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has

94

suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 21
## TITLE VII-RETALIATION
## (TERRI LEWIS-BLEDSOE)

306.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

307.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

308.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

309.    In retaliation for refusing her supervisor's requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination with the Illinois Department of Human Rights and the EEOC, Ford retaliated against this Plaintiff in the following ways:

      a.  Plaintiff was unfairly disciplined.

          i.   Supervisor George Melchor, at the instruction of Superintendent Alexander repeatedly denied Plaintiff requests to complain about sexual harassment to Ford's Labor Relations Department and disciplined or threatened to discipline Plaintiff.

      b.  Plaintiff was denied requests to use the restroom which were afforded to other similarly situated employees who did not complain about sexual harassment.

      c.  Ford denied Plaintiff use of the same tools at work that other employees are provided, and assigned her to a more difficult and less desirable job assignment in an effort to "set her up" to fail.

      d.  The aforementioned acts constituted unbearable changes in job conditions that constituted a hostile work environment.

310.   In addition, Ford denied Plaintiff the same overtime opportunities offered to other similarly situated employees who did not complain about sexual harassment, causing Plaintiff lost economic opportunity and reducing the financial terms of Plaintiff's employment.

311.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

312.   Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

313.   As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 22
## TITLE VII-RETALIATION
## (CONSTANCE MADISON)

314.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in her EEOC Charge.

315.     Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

316.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

317.     In retaliation for the Plaintiff's numerous complaints, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

   a.  Plaintiff was informed that Building Superintendent Chuck Nennert was "out to get" Plaintiff because he was upset Plaintiff filed a sexual harassment complaint.

           i.     Nennert and his subordinate, Supervisor Dan Lacey are known for targeting employees for termination or in an effort to force them to quit when they have complained about sexual harassment and discrimination.

97

ii.     When Plaintiff complained about Nennert's retaliation to Labor Relations Representative Natalie Dahrenger, Dahrenger told Plaintiff "Chuck [Nennert] is the pillar of the community. Whatever he says goes."

b.  Plaintiff (originally on the day-shift or "A-Crew") was unfairly demoted to a less desirable shift ("B-Crew").

i.     Working on the A-Crew is a more desirable shift and is of higher demand amongst employees than B-Crew (night-shift).

ii.     Because there is high demand for A-Crew, determining whether Plaintiff or similarly situated employees are selected for A-Crew is done by seniority and disciplinary history.

iii.     While Plaintiff was demoted to B-Crew, similarly situated employees that did not complain were permitted to remain on A-Crew even though they had less seniority.

iv.     Thereafter, Plaintiff was subjected to increased performance scrutiny, criticism and unfair discipline.

c.  Based on the foregoing, Plaintiff's demotion and unfair discipline reduced her future career prospects and reduced her likelihood of being promoted back to A-Crew.

d.     Ford denied Plaintiff the most basic of reasonable accommodation requests regarding pain and swelling in her arthritic hands – a request that she occasionally be allowed to apply ice to her hands.

98

318.     Ford's manipulation of Plaintiff's job placement and denial of the most basic request that she be allowed to occasionally apply ice to her hands has materially altered the terms and conditions of her employment.

319.     Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

320.     Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

321.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 23
## TITLE VII-RETALIATION
### (CEPHANI MILLER)

322.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint and in Plaintiff's EEOC Charge.

323.     Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

324.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

325.    While working as a Process Coach (a mid-level supervisory position at Ford's Chicago Assembly Plant), Plaintiff experienced another Process Coach Willie Fonseca sexually harass her as well as lower level female employees.

326.    Plaintiff complained about this to her superior, Supervisor Mike Reese.

327.    Thereafter, Superintendent Washington became Plaintiff's direct supervisor.

328.    Washington informed Plaintiff that she did not like complainers and had heard that Plaintiff had been complaining about sexual harassment.

329.    Under Washington, Plaintiff experienced that she, as a female, was scrutinized more heavily than similarly situated male employees.

330.    Plaintiff's predecessor in that position, a female named Valerie, also complained about Washington giving preferential treatment to similarly situated male employees.

331.    Valerie was moved to a department she was not familiar with after she complained about Superintendent Washington.

332.    In late 2013, Plaintiff complained to Human Resources Manager Tony Dotson that Superintendent Washington was providing more favorable treatment to male employees than to female employees, including increased scrutiny toward Plaintiff relative to similarly situated male employees.

333.    Plaintiff also informed Dotson that Washington stated she did not like complainers and that Plaintiff was fearful of retaliation from Washington.

334.    Superintendent Washington told Plaintiff "I will do everything in my power to get [Plaintiff] fired" or words to that effect.

100

335.    After Plaintiff complained to HR about Washington, Plaintiff was retaliated against and demoted from a salaried managerial position to an hourly position on the assembly line.

336.    When Plaintiff was demoted, she was assigned to work under sexual harassing supervisors Superintendent Myron Alexander and Supervisor George Melchor.

337.    Alexander and Melchor were uncomfortable with Plaintiff being in their department because it was known she previously complained against sexual harassment and retaliation.

338.    Alexander viewed Plaintiff as a threat to expose his ongoing and rampant sexual harassment of other women in the Plaint Department at the Chicago Assembly Plant.

339.    After Plaintiff was demoted from a managerial employee to an assembly-line worker, some employees came to Plaintiff to seek guidance as to how to complain about discrimination at Ford.

340.    Alexander and Melchor recognized that other women were going to Plaintiff for guidance and retaliated against Plaintiff for assisting other sexual harassment or discrimination victims by subjecting her to increased scrutiny and meritless disciplinary write-ups.

341.    In retaliation for the Plaintiff's numerous complaints about sexual harassment and discrimination, and for helping other similarly situated women complain and for filing

charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

      a.  Plaintiff was unfairly disciplined;

      b.  Ford subjected Plaintiff to a higher standard of workplace scrutiny and unfair performance critiques;

      c.  Ford suspended Plaintiff for a week without pay in retaliation for her criticizing and complaining about Supervisor Willie Fonseca sexually harassing her and other women because she pinched his arm and told him to stop being disrespectful toward women.

      d.  Ford demoted Plaintiff because she rebuked and complained about Supervisor Willie Fonseca sexually harassing her and other similarly situated women and gender discrimination.

      e.  Ford subjected Plaintiff to repeated write-ups from sexual harassers George Melchor and Myron Alexander because she helped other women complain against sexual harassment and Superintendent Alexander viewed her as a threat to expose his ongoing and rampant sexual harassment of other women in the workplace.

      f.  Ford refused to reinstate Plaintiff to a Supervisor position.

342.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

343.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

344.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 24**
**TITLE VII-RETALIATION**
**(MIYOSHI MORRIS)**

345.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint and in her EEOC Charge.

346.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

347.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

348.    In retaliation for refusing her supervisor's requests for sex, for the Plaintiff's numerous complaints, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.  Plaintiff was unfairly disciplined.

b.  Plaintiff was held to increased performance scrutiny.

c.  Plaintiff was deprived of overtime opportunities.

d.  Ford terminated Plaintiff, claiming this was due to a paperwork issue, but a similarly situated white male employee who did not complain about sexual harassment and who was also terminated for an identical paperwork reason was allowed back to work.

e.  Ford has failed to reinstate Plaintiff or return Plaintiff to work.

349.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

350.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

351.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 25**
**TITLE VII-RETALIATION**
**(STEPHANIE SZOT)**

352.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

353.    Plaintiff and similarly situated individuals have been retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

354.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable,

and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

355.    In retaliation for refusing her supervisor's and other male co-workers' requests for sex, and for the Plaintiff's numerous complaints, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

      a.  Plaintiff has been stalked and assaulted by one of her sexual harassers, both in and outside of the workplace, and Ford refuses to punish the stalker.

            i.  Ford has refused to protect Plaintiff and refused to obtain an Order of Protection for her benefit as it is permitted to do pursuant to the Illinois Workplace Violence Prevention Act.

      b.  Plaintiff was told that Ford would not reassign her stalker to another shift because he was too important and valuable, and that if she wanted relief from his hostile, aggressive and threatening conduct at work, she could either be reassigned from her shift that received a 10% shift premium to a lower paying, less desirable work assignment that would not receive as many overtime hours or alternatively, Defendant would "figure out a reason" to suspend Plaintiff for 30 days.

            i.  Plaintiff was forced to accept a lower paying job assignment in order to avoid a thirty-day suspension without pay, however, her sexual harasser continued to be allowed to work the higher paying and more desirable shift.

c. Plaintiff has also been deprived of substantial wages, including substantial overtime opportunities since complaining.

356. Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

357. Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

358. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 26
## TITLE VII-RETALIATION
## (SHIRLEY THOMAS-MOORE)

359. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

360. Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

361. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

362.    In retaliation for Plaintiff's numerous complaints and helping other women to complain, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.  Plaintiff has been demoted from her trainer position and transferred to a less desirable job position that pays less money;

b.  Plaintiff has been afforded fewer overtime hours than similarly situated employees who did not complain.

c.  Ford has failed and refused to reinstate and/or promote Plaintiff to her previous positon.

363.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

364.    Plaintiff's complaints and the filing of this EEOC Charge led to or was a major factor in the adverse employment actions she suffered.

365.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 27
## TITLE VII-RETALIATION
### (ROSE THOMAS)

366.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

367.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

368.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

369.    In retaliation for refusing her supervisor's and other male co-workers' requests for sex, and for the Plaintiff's numerous complaints, and for filing charges of discrimination and sexual harassment with the EEOC, Ford has retaliated against this Plaintiff in the following ways:

a.    Plaintiff was subjected to heightened performance scrutiny and unfairly disciplined;

b.    Plaintiff suffered experienced extreme emotional distress and took a medical leave of absence to treat her condition, but when she attempted to return, Ford insisted on placing her back to work under the supervision of her sexual harassers.

c.  Ford used the excuse that because it could not allow her to work with her sexual harassers, it would not return her to work, and instead terminated Plaintiff and/or constructively discharged Plaintiff from employment.

370.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

371.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

372.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 28**
**TITLE VII/ADA-RETALIATION**
**(TONI WILLIAMS)**

373.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

374.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

375.    Plaintiff suffered extreme emotional distress caused by ongoing sexual harassment and her doctor subsequently diagnosed her with hypertension and related cardio-pulmonary concerns.

376.    Plaintiff's doctor recommended that Plaintiff be moved away from sexual harassers who were causing an acutely stressful workplace for her.

377.    Plaintiff complained to Alex Keweny in Labor Relations and to a nurse in Ford's medical department that she was experiencing heart-related conditions which were caused by her sexual harassers and that as a reasonable accommodation she needed to be moved away from her sexual harassers to a less-stressful workplace environment.

378.    In retaliation for the Plaintiff's complaints, and for filing an EEOC charge, Ford has retaliated against this Plaintiff in the following ways:

a.  Plaintiff was subjected to increased performance scrutiny relative to employees that did not complain and who did not request a reasonable accommodation.

b.  One of Plaintiff's sexually harassing Supervisors, Robert Powell refused her requests to go for medical treatment even when she experienced extreme emotional distress, elevated blood pressure and severe chest pains at work and told her "Ford is a stressful place. Deal with it."

i.  Plaintiff's chest pains were so severe that she went to Ford's medical department anyway and the medical department told Plaintiff to go to the hospital for evaluation.

c.  When Plaintiff attempted to return to work, Labor Relations Representative Alex Keweny told Plaintiff that she had "walked off the job" and that she was fired.

110

      i.    Keweny and Supervisor Robert Powell wrote Plaintiff up as having "walked off the job", even though she had only left to seek urgent medical treatment.

d.  The real reason Ford terminated Plaintiff was because she had complained about sexual harassment and informed Ford of her emotional distress and debilitating cardio-pulmonary condition which were triggered by workplace sexual harassment.

e.  Ford failed to offer Plaintiff reinstatement in a work area away from Supervisor Powell and free of sexual harassment.

379.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

380.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

381.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 29**
**TITLE VII & 1981-RETALIATION**
**(BERNADETTE CLYBURN)**

382.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 162 of the Complaint.

383.     Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

384.     Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

385.     In retaliation for complaining about and refusing her supervisor's and other male co-workers' requests for sex, Ford has retaliated against this Plaintiff in one or more of the following ways:

        a.   When Plaintiff complained about sexual harassment and/or unwanted sexual advances, Superintendent Miller assaulted Plaintiff in the workplace in front of co-worker Linda Sweeney, yelled at Plaintiff and poker her in the chest with her finger, threatening violence.

        b.   Miller subjected Plaintiff to increased performance scrutiny and unfair discipline, and demanded that other lower level supervisors watch Plaintiff for reasons to write her up or have her terminated.

        c.   Employees who did not complain about sexual harassment were not similarly scrutinized.

        i.    Supervisor Janie Little recognized that Superintendent Miller's retaliatory and harassing treatment of Plaintiff was outrageous, and told Plaintiff that she was tired of Miller's fixation on and harassing treatment of Plaintiff.

d.  When Ford conducted interviews related to Plaintiff's claims of sexual harassment and retaliation.

        i.    During these interviews, Labor Relations Representatives were not interested in learning about sexually harassing or retaliatory acts, but instead subjected the witnesses to extensive questions seeking to find any basis to write-up or discipline Plaintiff.

        ii.    Witnesses Ray Oller and Marzette Gusta were subjected to extensive questioning asking whether they believed Plaintiff Clyburn was hostile or caused problems.

e.  After Plaintiff complained about racial discrimination or perceived racial discrimination against Supervisors Zack Bosanick and Alissa Millard, Plaintiff was identified by her new Supervisors as being "defiant" and was deprived overtime opportunities which were given to other employees who were not considered so "defiant" – employees that did not file civil rights complaints against their supervisors.

f.  Plaintiff's supervisors further retaliated against her by depriving her overtime relative to similarly situated employees who did not complain.

386.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

387.    Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

388.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 30
## TITLE VII-RETALIATION
## (ANGELA GLENN)

389.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

390.    Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

391.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

392.    From 2012-August, 2013, Plaintiff experienced sexual harassment at Ford.

393.    In February, 2013, Plaintiff complained to the Sexual Harassment Hotline that her supervisor, Robert Powel repeatedly touched her on her shoulders, arms, back and neck and told her that he "owned" her.

394.    Plaintiff complained to the hotline that when she repeatedly told Supervisor Powell to stop touching her, he looked at her defiantly and told her he did it with all of the other women and was going to keep doing it to her.

395.    Although Plaintiff was reassigned away from Powell, she was assigned to a position similar to the position Plaintiff Teresa Bosan and other smaller statured women were assigned after complaining about sexual harassment – a position that required an employee to constantly reach overhead to install a part. This position was ergonomically designed for a much taller employee and caused much smaller employees to constantly stand on their tippy-toes to perform the job.

396.    Ford refused to provide Plaintiff with either adequate training on the new position that it otherwise provided to employees who did not complain.

397.    Plaintiff was placed in this position and denied adequate training in retaliation for complaining.

398.    As a result of this retaliatory assignment and as a result of inadequate training in this position, Plaintiff severely injured her back and shoulder doing the new job, including herniating discs in her back and tearing her rotator cuff.

399.    Although Plaintiff filed a Worker's Compensation claim related to the workplace injury, Ford did not permit her to return to work and instead, terminated her employment.

115

400.   Ford failed to reinstate Plaintiff or return her to work.

401.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

402.   Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

403.   As a result of the foregoing, Plaintiff has suffered damages of an ongoing and continuous nature.

**COUNT 31**
**TITLE VII-RETALIATION**
**(LADWYNA HOOVER)**

404.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

405.   Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

406.   Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

407.   In retaliation for complaining about her supervisor's and other male co-workers' requests for sex, and for the Plaintiff's numerous complaints regarding sexual harassment and discrimination, Ford retaliated against this Plaintiff in the following ways:

116

a. Plaintiff was subjected to heightened performance scrutiny and was unfairly disciplined.

b. Supervisor Bivens assigned Hoover to the most physically demanding job assignments knowing that she was too small to perform the job. He used this same retaliatory technique to against other women who spurned his sexual advances, including Theresa Bosan.

c. Ford knew that the particular position to which Bosan and Hoover were assigned was impossible for either of these employees to effectively perform as the Ergonomics manager, Red Marshall confessed to Bosan: "We're not supposed to tell you this, but not all jobs are for women who are as small as you. This one is not for you. You are too little."

d. Superintendent Chuck Nennert condoned Hoover being placed on a physically difficult job because it might get her to quit.

e. This retaliatory technique by Bivens was well known to the union as a way Chuck, Bivens and Ford got "complainers" to quit.

f. Ford's retaliatory and inappropriate job reassignment imperiled Plaintiff and caused her to become injured, and she required multiple surgeries for her injuries.

g. Hoover requested that her medical leave be extended to accommodate the extended medical treatment she required.

h.  Ford typically granted medical leave extensions to injured employees who did not complain and whose workplace injuries required similar extensive surgeries and treatment.

i.  However, because Hoover was a known "complainer", Ford did not grant her leave extension and terminated her employment.

j.  Ford has failed to reinstate Plaintiff and failed to return her to work.

408.  Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

409.  Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

410.  As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 32
## TITLE VII-RETALIATION
### (OGERY LEDBETTER)

411.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

412.  Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language and for complaining about unfair overtime distribution between male and female employees.

118

413.    In 2012 and 2013, Plaintiff complained to Superintendent Myron Alexander and another Supervisor that male employees were being given preferential treatment for overtime work by Alexander and Supervisor Tracy Luxx.

414.    After complaining about gender discrimination to Supervisors, Tracy Luxx asked other supervisory employees to closely scrutinize Plaintiff and to write Plaintiff up, even for nominal mistakes.

415.    Supervisor George Melchor subsequently informed Plaintiff of Luxx's retaliatory instructions and told Plaintiff: "watch your back."

416.    In retaliation for complaining, Plaintiff was reassigned from a position in the Spill-out Department to a position in the Sealer Department.

417.    The Spill-out Department is one of the cleanest work areas in the plant.

418.    Jobs that Plaintiff worked in Spill-out included cleaning finished vehicles and touching-up paint-jobs.

419.    Jobs in Spill-out are very desirable and are typically filled with employees who have the most seniority in the plant.

420.    The Sealer Department is a much dirtier, less desirable work area in which employees, by hand use sticky clay-like materials, epoxy and other fillers to repair cracks and divots in cars.

421.    Working in the Sealer Department causes employees' clothes to become dirty and stained and their hands to become dry, brittle and cracked unless heavy moisturizers were used on a frequent basis.

119

422.    Positions in the Sealer Department were typically filled by employees with less seniority because they were less desirable positions.

423.    This reassignment was to a job with significantly different job responsibilities.

424.    As of 2012, Plaintiff had at least twenty-two years of seniority.

425.    A transfer of a high-seniority employee from Spill-out to the Sealer Department was humiliating for the Plaintiff and an unbearable change in her job conditions.

426.    Myron Alexander told Plaintiff that the UAW rules regarding transfers provided that only the Spill-out employee with the lowest seniority should have been eligible to be re-assigned to the Sealer Department job.

427.    Despite that Plaintiff was one of the highest seniority employees in Spill-out, Plaintiffs Supervisors retaliated against her for complaining and reassigned her to the less desirable job in the Sealer Department.

428.    Plaintiff then complained to her UAW Representative Armando Lozano and Ford's sexual harassment hotline about continuing discrimination and retaliation.

429.    Although Plaintiff was moved back to the Spill-out Department after complaining, Ford continued to condone discrimination and retaliation in the workplace.

430.    Alexander continued sexually harassing Plaintiff and other women.

431.    Plaintiff complained that Alexander should stop trying to touch and sexual harass her.

432.    Alexander told Plaintiff that he was going to continue doing whatever he wanted to women and that unless she retired, he was going to eventually grope her buttocks and there was nothing she could do to stop him.

433.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

434.    When Plaintiff repeatedly complained, Supervisors Lux and Alexander intended to intended to make Plaintiff's workplace conditions so intolerable that it would force her to resign/retire.

435.    Because of the hostile workplace environment Plaintiff experienced from ongoing sexual harassment, discrimination and retaliation, Plaintiff's workplace conditions were so unusually adverse that a reasonable employee in her position would have felt compelled to resign/retire.

436.    As a result of Defendant's retaliation, Plaintiff was constructively discharged from her employment.

437.    The repeated retaliatory acts by Ford's supervisory personnel in response to Plaintiff's repeated complaints constitute materially adverse employment actions.

438.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

439.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has

suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 33**
**TITLE VII-RETALIATION**
**(LATRICIA SHANKLIN)**

440.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

441.    Plaintiff and similarly situated individuals have been retaliated against for complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

442.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

443.    In 2013, Plaintiff repeatedly complained about sexual harassment from her Supervisors to Human Resources Manager Terrance McClain.

444.    McClain did not appear to actively pursue investigations into Plaintiff's sexual harassment complaints. Rather, McClain also made sexual passes at the Plaintiff and sexually assaulted her.

445.    When Superintendent Myron Alexander sexually assaulted Plaintiff in an upstairs office at Ford, in 2014, Alexander threatened that Plaintiff would be terminated if she complained to Labor Relations or the EEOC.

122

446.    This threat of termination constitutes a retaliatory act against Plaintiff and constitutes a materially adverse employment action.

447.    Plaintiff complained to the sexual harassment hotline and to Labor Relations about Supervisors Brian Hubbard, Myron Alexander and Terrance McClain sexually harassing her.

448.    Plaintiff's regular position is as a "Prep-Polisher."

449.    Prior to complaining about sexual harassment, Plaintiff was occasionally asked to fill-in and perform duties as a "Driver" in the Pre-delivery Department of Ford's Assembly Plant.

450.    When Plaintiff was permitted to occasionally work as a Driver in Pre-delivery, she was given increased earning opportunities, as she and other Drivers were permitted to work through lunch and breaks -- thus receiving more hours and overtime hours in a day.

451.    After Plaintiff complained about sexual harassment and joined this lawsuit, she has been denied any opportunities to work as a Driver.

452.    Plaintiff asked Supervisor Kim Simms why she was not allowed to work as a Driver any more.

453.    Simms told Plaintiff that Hubbard instructed Plaintiff not be allowed to perform the Driver position.

454.    In retaliation for Plaintiff complaining about sexual harassment, Hubbard retaliated against Plaintiff and has barred her from ever receiving an opportunity to work as a Driver.

455. In further retaliation for Plaintiff complaining, Hubbard subjected Plaintiff's daughter (who also works at Ford) to unfair scrutiny and discipline until Plaintiff's daughter was terminated.

456. After Plaintiff complained, she experienced retaliation as stated in the aforementioned paragraphs which constitute lost economic opportunity and unbearable changes in her job conditions equating to a hostile work environment.

457. Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

458. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 34
## TITLE VII-RETALIATION
## (ANTOINETTE SULLIVAN)

459. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

460. Plaintiff and similarly situated individuals have been retaliated against for complaining against sexual advances, comments, innuendo, and lurid foul and offensive language.

461. Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable,

and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

462.    Plaintiff complained about sexual harassment on numerous occasions including to her UAW Representative John, to Ford's sexual harassment hotline, and to Labor Relations Representative Natalie Dahrenger.

463.    From mid-July, 2012-December, 2012, Plaintiff repeatedly met with Dahrenger, but during this time period, Dahrenger refused to discuss sexual harassment and only wanted to discuss Plaintiff's recent carpal tunnel surgery.

464.    Plaintiff had received wrist surgery in May, 2012 and had returned to work following her surgery.

465.    Plaintiff had been placed back on the line and had been capably performing the job to which she was assigned for weeks.

466.    Despite that Plaintiff had demonstrated her ability to capably perform her job, Dahrenger and Ford refused to allow Plaintiff to continue performing her job and terminated her for complaining about sexual harassment.

467.    Ford has failed to reinstate Plaintiff and failed to return her to work.

468.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

469.    Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

470.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has

suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 35
## TITLE VII-RETALIATION
### (DERRICKA THOMAS)

471.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

472.   Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

473.   Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

474.   In retaliation for complaining about her supervisor's and other male co-workers' requests for sex, and for the Plaintiff's numerous complaints regarding sexual harassment and discrimination, Ford retaliated against this Plaintiff in the following ways:

a.   Plaintiff was subjected to increased performance scrutiny relative to employees who did not complain.

b.   In January, 2016, Plaintiff's Supervisor Pryor – the same Supervisor that laughed about Plaintiff and her co-worker Tiffany's sexual harassment complaints – retaliated against Plaintiff for complaining and caused Plaintiff to be sent home two hours early without pay.

126

c.   After Plaintiff complained about sexual harassment and encouraged other women, including Tiffany to complain, Supervisor Pryor has retaliated against Plaintiff by writing her up three times and attempted to have her suspended without pay for three days.

d.   Pryor did not write-up similarly situated non-complaining employees for trivial issues.

e.   Prior has identified Plaintiff as a "complainer" to other Supervisors, including Superintendent Miller and Supervisors Jennifer and Peggy.

i.   Supervisor Peggy has repeatedly told Plaintiff that she was going to be written up trivial issues including that her hair was unkept or her clothing was inappropriate.

ii.   Plaintiff confirmed with her UAW representative each time that her hair and clothing were appropriate.

iii.   Supervisor Peggy subsequently verbally apologized to Plaintiff and stated that there were continuing demands "from the top" that she continue to scrutinize the Plaintiff.

f.   Plaintiff's Supervisors have told other co-workers to "stay away" and "don't help" Plaintiff. Plaintiff receives significantly less support and job training than other women that have not complained.

g.   Similar to retaliatory tactics used with other short statured women who complained, Plaintiff, 5'3", has been reassigned to a job hooking up wires on a car moving overhead.

127

           i.     This job requires Plaintiff to stand on her tip-toes – a job that is extremely difficult – if not impossible -- for a short-statured person to perform.

          ii.     Supervisor Conrad has admitted to Plaintiff that the job is for "a much taller person."

475.   The aforementioned acts caused Plaintiff lost economic opportunity and unbearable changes in her job conditions that constitute a hostile work environment.

476.   Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

477.   Plaintiff's complaints and the filing of this lawsuit led to or were a major factor in the adverse employment actions she suffered.

478.   As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 36**
**TITLE VII-RETALIATION**
**(NICHEA WALLS)**

479.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of the Complaint.

480.    Plaintiff and similarly situated individuals have been retaliated against for refusing sexual advances, comments, innuendo, and lurid foul and offensive language.

481.    Supervisors have gone out of their way to make the Plaintiff's job more difficult, have made it clear that they were going to make her life in the plant miserable, and have taken extra measures to subject Plaintiff and others who complained about sexual harassment and discrimination to increased scrutiny and/or discipline.

482.    Plaintiff, 5'3", is currently working in a "floating" position at Ford.

483.    Supervisor Rich Basaga oversees "manpower" at the Assembly Plant and is responsible for assigning "floating" employees, including Plaintiff to jobs and/or departments in need of additional help.

484.    Basaga is close friends with Supervisor Mike Reese – one of Plaintiff's sexual harassers, as stated in more detail elsewhere in this Complaint.

485.    Before Plaintiff became a member of this lawsuit, she was assigned to positions that were ergonomically suited for her short stature.

486.    In retaliation for Plaintiff becoming a member of this lawsuit and in retaliation for Plaintiff complaining about Supervisor Mike Reese's sexual harassment, Basaga has retaliated against Plaintiff by:

a. repeatedly using lower-seniority employees to cover positions that were ergonomically suited for a woman of Plaintiff's short stature, including positions she was most familiar with such as "Headlight Aiming", "Shuffler" and "Inspector."

b. repeatedly assigning Plaintiff to less-desirable positions for her that were not ergonomically appropriate for a person of Plaintiff's short stature including positions Plaintiff was not familiar with such as "VIN Stamping" and "Brake-Line Fill."

    i. VIN Stamping involves an employee using a torque-wrench mechanism which was elevated above Plaintiff's head and was extremely difficult for her to maneuver.

        1. Plaintiff was required to jump to pull down on the torque lever.

        2. In addition, the platform on which the stamp itself was on was out-of-sight for a short employee like the Plaintiff.

        3. A short employee performing that job – at least under the current set-up – does so blindly.

        4. A short employee performing that job experiences a greater risk of injury.

        5. Basaga intended that Plaintiff would become injured or fail in the VIN Stamping position and constantly watched and scrutinized Plaintiff's performance.

    ii. Brake-Line Fill requires an employee with long arms to reach inside a vehicle to connect wires and hosing.

        1. An employee with short arms performing the Brake Line Fill job experiences a greater risk of injury.

        2. Basaga intended that Plaintiff would become injured or fail in the Brake Line Fill position and constantly watched and scrutinized Plaintiff's performance.

487. Employees who did not complain were not subjected to increased performance scrutiny, ergonomically inappropriate work assignments or increased risk of workplace injury.

488.     Plaintiff suffered neck and shoulder injuries as a result of the ergonomically inappropriate position assignments and is undergoing costly medical treatment and physical therapy and diminished economic opportunity due to being forced to take a medical leave.

489.     The aforementioned retaliatory acts caused Plaintiff to experience pervasive, unbearable changes in her job conditions after she complained which equate to a hostile work environment.

490.     Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

491.     Plaintiff's complaints and joining this lawsuit led to or were a major factor in the adverse employment actions she suffered.

492.     As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 37
## TITLE VII – NATIONAL ORIGIN DISCRIMINATON
### (DANIELLE KUDIRKA)

493.     Plaintiff adopts, realleges and incorporates by reference the allegations of paragraphs 1-82 of this Amended Complaint.

494.     Plaintiff's national origin is Lithuanian.

495.     Plaintiff's work performance meets Ford's legitimate expectations.

131

496.    Plaintiff experienced discrimination based on her national origin at Ford, including that:

        a.  Plaintiff's supervisors and co-workers mocked Plaintiff's Lithuanian accent and heritage;

        b.  Plaintiff's supervisors and co-workers communicated to Plaintiff that she was inferior for not being born in America;

        c.  Plaintiff's supervisors gave preferences to American-born workers who did not have a Lithuanian accent, including more desirable job assignments and more overtime hours;

        d.  Plaintiff was told she was not eligible for the most desirable work assignments because she was "foreign" and "dumb."

497.    Due to the continuous and ongoing discriminatory treatment, Plaintiff was humiliated and the terms and conditions of her employment were materially adversely affected.

498.    Plaintiff complained about national origin discrimination to Ford through her supervisors, union, Ford's hotline and Ford's Labor Relations Department.

499.    Despite Plaintiff's Complaints, Ford has not taken prompt remedial action to stop ongoing national origin discrimination against Plaintiff.

500.    Ford told Plaintiff to stop complaining and to stop seeking requesting more desirable work assignments which deprived Plaintiff of future promotional opportunities.

501. When Plaintiff complained, she was further demeaned, discriminated against and told to stop trying to improve her job opportunities because "you should be very happy you have a job at Ford" and "most immigrants cannot get this job."

502. As a result of illegal national origin discrimination, Plaintiff has suffered adverse employment actions, including reduced overtime opportunities, lost opportunities for job advancement and promotions, and being relegated to less desirable job positions.

503. As a direct and proximate result of the foregoing acts of national origin discrimination, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**COUNT 38**
**ADA- FAILURE TO ACCOMMODATE/RETALIATION**
**(CHRISTIE VAN)**

504. Plaintiff adopts, realleges and incorporates by reference the allegations of paragraphs 1-173 of this complaint as and for this paragraph.

505. This claim is brought under the Americans with Disabilities Act, as amended ("ADA").

506. Plaintiff is a qualified individual with a disability (Major Depression, and Severe and Generalized Anxiety Disorder) all of which were caused by the harassment and discrimination she endured at Ford.

507. As a result of her condition, Plaintiff took a medical leave of absence.

508.    Thereafter, while on leave, Ford required Plaintiff to be examined by a company doctor and to submit to multiple IME's, including one with Dr. Alexander Obolsky from the Northwestern Medical Faculty Foundation.

509.    Dr. Obolsky released Van to return to work with the only restriction being that Ford should not place Van in proximity to her harassers.

510.    Ford refused to return Van to work despite the return being authorized by its own physician.

511.    Van was forced to file a grievance and take the matter to arbitration to win her job back.

512.    The arbitrator ruled in Van's favor and against Ford at the arbitration.

513.    Ford has knowledge of Plaintiff's disability.

514.    Plaintiff requested a reasonable accommodation – that she be allowed to work without being directly supervised by the same sexual harassers about whom she previously complained.

515.    Ford refused to engage in an interactive process and refused to provide Plaintiff with the reasonable accommodation she requested.

516.     Ford forced Plaintiff to pay for the costs associated with the medical visits for the IMEs which Ford required.

517.     Ford required plaintiff to undergo IMEs on September 24, 2013, September 30, 2013 and October 8, 2013.

518.    Thereafter, Ford withheld and refused to provide plaintiff with the results of the IMEs for more nearly four months, thus delaying her return to work and denying Plaintiff her wages and benefits.

519.    As a direct and proximate result of the foregoing acts of disability discrimination and failure to reasonably accommodate the Plaintiff, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## ALLEGATIONS COMMON TO PLAINTIFFS' INTENTIONAL TORT CLAIMS

520. Many of the Named Plaintiffs have been assaulted by or battered by male supervisory employees while employed at Ford Motor Company between 2012 and the present.

521. Ford was aware of intentional, offensive touching occurring by its supervisors and male co-workers toward the Plaintiffs.

522. Since at least 2012, Ford has received dozens of complaints by women of unwelcome, unwanted, harmful or offensive touching or threatened touching.

523. Ford has not done anything to remedy this environment.

524. By failing and refusing to discipline employees who commit battery, assault or other intentional torts, Ford has expressly or tacitly condoned the commission of intentional torts in the workplace.

525. In many instances, the intentional tortious conduct (assaults and batteries) were committed by management, while in other situations, such acts were committed in the presence of management without repercussion.

526. Ford's sexually harassing Supervisors including George Melchor have explicitly stated to EEOC investigators that top management in Detroit "has a lot of money invested in the [Chicago Assembly Plant" and operates the plant "like a family."

527. Despite this, Ford's highest level supervisors, including Detroit-based Labor Relations Director, Jim Larese, have been informed of ongoing offensive touching and groping at Ford's Chicago plants.

528.    Instead of taking swift remedial action to stop ongoing batteries and assaults, Larese instructed then-UAW Building Chairman Grant Morton that "you're people better stop complaining."

529.    At the Assembly Plant, Labor Relations Representatives Natalie Dahrenger and Fluretta Drummer emphasized to Grant Morton that getting plaintiffs to drop their EEOC charges as a bigger priority than resolving ongoing batteries and assaults.

530.    By management committing intentional tortious acts (assaults and batteries), and by permitting such acts to occur without repercussion, Ford has actively and effectively encouraged such behavior in the workplace.

531.    Upper-level Supervisors have groped, touched and battered women or attempted to grope, touch or batter women. Examples include but are not limited to:

    a.    Superintendent Myron Alexander (battered and/or assaulted Gardner, Dahn, Corbin, Ledbetter, Lewis-Bledsoe, Shanklin, Morris) and Supervisors underneath him, including Melchor (Dahn);

    b.    Superintendent Darryl Gallowy (Kudirka);

    c.    Superintendent Robert Devine (multiple women);

    d.    Supervisor (recently promoted to Superintendent) Jeff Bivens (Hoover);

    e.    Supervisor Buck Owens (Leviege and Jordan);

    f.    Supervisor Robert Powell (Bosan, Glenn and Williams);

    g.    Supervisor Rich Murray (Campbell);

    h.    Supervisor Mike Reese (Van; Walls);

    i.    Team Leader Ron Woods (Goforth);

j. Team Leader Ken Millender (Exum);

k. Team Leader Lance Caldman (Dahn);

l. Team Leader Tony (last name presently unknown) (Harris);

m. Union Chairperson Coby Millender (Morris and multiple other women).

532. These managers had authority to establish working conditions, make employment decisions and set policy within their departments and on behalf of Ford.

533. In setting this policy, many of these managers took a position that by virtue of their supervisory authority at Ford, they "owned" female employees and could touch them as they pleased, including making explicit statements to many of the Named Plaintiffs, including but not limited to:

a. Superintendent Myron Alexander told Ogery Ledbetter that he was going to grope her buttocks and "there isn't anything you can do to stop me";

b. Supervisor Robert Powell told Angela Glenn: "you belong to me now";

c. Team Leader Tony told Christine Harris: "Get used to it. I do it (forcefully grab and dry hump) to all the girls and I'm going to keep doing it to you."

534. Ford is and was aware of numerous specific instances of men offensively and aggressively touching and assaulting women but plant policy was not to take action to stop ongoing workplace violence or sexual violence toward women.

535. Despite that the Illinois Legislature has equipped Ford to obtain an Order of Protection for victims of workplace batteries and assaults pursuant to the Illinois Violence in the Workplace Prevention Act, Ford has not taken out an Order of Protection for the benefit of any of the named Plaintiffs.

138

536. Instead, Ford has established a policy by which it actively has interfered with Plaintiffs obtaining Orders of Protection from the police for batteries, assaults and other acts of workplace violence they have suffered at Ford.

537. By way of example, Supervisor Buck Owens battered Charmella Leviege when he fondled her breast at work.

538. Leviege sought to file a police report against Buck Owens at work, but Ford interfered, refused to permit Plaintiff to make a full statement to the police on work premises and effectively prevented Leviege from obtaining an Order of Protection.

539. Ford actively protected Owens so that he could go on to batter, assault and offend other women, including but not limited to Named Plaintiffs Lawanda Jordan and Shirley Thomas-Moore.

540. Ford's policy within its Chicago-based plants has been to thwart outside enforcement agencies such as the police and EEOC from interfering with ongoing batteries and assaults committed by its Supervisory and other male personnel.

541. This continued to be true when known sexual predator, Superintendent Myron Alexander forcibly attacked and terrorized Supervisor Jeannette Gardner in order to "make an example" out of her in front of other Supervisors.

542. Ford did not stop Alexander from continuing to batter and assault women, but instead did everything it could to bury their complaints, terminate their employment and keep Myron on the payroll – even if it meant permitting him to batter, assault and molest more than one-half dozen female employees.

543. From 2012 at least until this lawsuit was filed in 2014, Ford's actual policy was to permit and condone batteries and assaults in its Assembly and Stamping plants and to condone and protect the tortious activity of its assailants who committed such acts.

544. The intentional assaults and batteries caused to the named Plaintiffs in the Counts below are intentional torts committed as a result of Ford policy.

## COUNT 39
## BATTERY
## (CHRISTIE VAN)

545. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-173, and 504-544 as and for this paragraph.

546. Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

547. Defendant took no steps to prevent Plaintiff from suffering a battery.

548. The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

549. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

140

**COUNT 40**
**BATTERY**
**(CHARMELLA LEVIEGE)**

550.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-162, 174-181 and 520-544 as and for this paragraph.

551.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

552.    Defendant took no steps to prevent Plaintiff from suffering a battery.

553.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

554.     As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 41**
**BATTERY**
**(MARIA PRICE)**

555.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-162, 182-190 and 520-544 as and for this paragraph.

556.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

557.    Defendant took no steps to prevent Plaintiff from suffering a battery.

558.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

141

559.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 42**
**BATTERY**
**(HELEN ALLEN)**

560.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-162, 191-197, and 520-544 as and for this paragraph.

561.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

562.    Defendant took no steps to prevent Plaintiff from suffering a battery.

563.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

564.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 43**
**BATTERY**
**(THERESA BOSAN)**

565.     Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 205-214 and 520-544 as and for this paragraph.

566.     Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

567.     Defendant took no steps to prevent Plaintiff from suffering a battery.

568.     The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

569.     As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 44**
**BATTERY**
**(SHRANDA CAMPBELL)**

570.     Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-162, 215-221 and 520-544 as and for this paragraph.

571.     Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

572.     Defendant took no steps to prevent Plaintiff from suffering a battery.

573.     The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

143

574.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 45**
**BATTERY**
**(KETURAH CARTER)**

575.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 222-236 and 520-544 as and for this paragraph.

576.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

577.    Defendant took no steps to prevent Plaintiff from suffering a battery.

578.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

579.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 46
## BATTERY
### (MICHELLE DAHN)

580.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 237-243 and 520-544 as and for this paragraph.

581.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

582.    Defendant took no steps to prevent Plaintiff from suffering a battery.

583.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

584.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 47
## BATTERY
### (TONYA EXUM)

585.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-162, 244-250 and 520-544 as and for this paragraph.

586.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

587.    Defendant took no steps to prevent Plaintiff from suffering a battery.

588.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

145

589.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 48
## BATTERY
## (JEANNETTE GARDNER)

590.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 251-257 and 520-544 as and for this paragraph.

591.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

592.    Defendant took no steps to prevent Plaintiff from suffering a battery.

593.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

594.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 49**
**BATTERY**
**(ARLENE GOFORTH)**

595.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 258-264 and 520-544 as and for this paragraph.

596.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

597.    Defendant took no steps to prevent Plaintiff from suffering a battery.

598.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

599.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 50**
**BATTERY**
**(CHRISTINE HARRIS)**

600.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 265-271 and 520-544 as and for this paragraph.

601.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

602.    Defendant took no steps to prevent Plaintiff from suffering a battery.

603.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

147

604.   As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 51
## BATTERY
## (DANIELLE KUDIRKA)

605.   Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 299-305, 493-503, and 520-544 as and for this paragraph.

606.   Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

607.   Defendant took no steps to prevent Plaintiff from suffering a battery.

608.   The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

609.   As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 52
## BATTERY
## (TERRI LEWIS-BLEDSOE)

610.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 306-313 and 520-544 as and for this paragraph.

611.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

612.    Defendant took no steps to prevent Plaintiff from suffering a battery.

613.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

614.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 53
## BATTERY
## (MIYOSHI MORRIS)

615.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-162, 345-351 and 520-544 as and for this paragraph.

616.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

617.    Defendant took no steps to prevent Plaintiff from suffering a battery.

618.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

149

619.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 54
## BATTERY
## (STEPHANIE SZOT)

620.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 352-358 and 520-544 as and for this paragraph.

621.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

622.    Defendant took no steps to prevent Plaintiff from suffering a battery.

623.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

624.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 55**
**BATTERY**
**(MARTHA CORBIN)**

625.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111 and 520-544 as and for this paragraph.

626.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

627.    Defendant took no steps to prevent Plaintiff from suffering a battery.

628.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

629.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 56**
**BATTERY**
**(ANGELA GLENN)**

630.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 389-403 and 520-544 as and for this paragraph.

631.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

632.    Defendant took no steps to prevent Plaintiff from suffering a battery.

633.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

151

634. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 57
## BATTERY
## (LADWYNA HOOVER)

635. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 404-410 and 520-544 as and for this paragraph.

636. Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

637. Defendant took no steps to prevent Plaintiff from suffering a battery.

638. The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

639. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 58**
**BATTERY**
**(OGERY LEDBETTER)**

640. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 411-439 and 520-544 as and for this paragraph.

641. Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

642. Defendant took no steps to prevent Plaintiff from suffering a battery.

643. The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

644. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 59**
**BATTERY**
**(DERRICKA THOMAS)**

645. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 471-478 and 520-544 as and for this paragraph.

646. Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

647. Defendant took no steps to prevent Plaintiff from suffering a battery.

648. The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

649.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 60
## BATTERY
## (NICHEA WALLS)

650.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 479-492 and 520-544 as and for this paragraph.

651.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

652.    Defendant took no steps to prevent Plaintiff from suffering a battery.

653.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

654.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 61**
**BATTERY**
**(LATRICIA SHANKLIN)**

655.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-111, 440-458 and 520-544 as and for this paragraph.

656.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

657.    Defendant took no steps to prevent Plaintiff from suffering a battery.

658.    The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

659.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**COUNT 62**
**ASSAULT**
**(CHRISTIE VAN)**

660.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 163-173 and 504-549 as and for this paragraph.

661.    The foregoing acts by the Defendant were done intentionally.

662.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

663.    Defendant took no steps to prevent Plaintiff from being assaulted.

664. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

## COUNT 63
## ASSAULT
## (CHARMELLA LEVIEGE)

665. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 174-181, 520-544 and 550-554 as and for this paragraph.

666. The foregoing acts by the Defendant were done intentionally.

667. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

668. Defendant took no steps to prevent Plaintiff from being assaulted.

669. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

## COUNT 64
## ASSAULT
## (MARIA PRICE)

670. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 182-190, 520-544 and 555-559 as and for this paragraph.

671. The foregoing acts by the Defendant were done intentionally.

672. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

673. Defendant took no steps to prevent Plaintiff from being assaulted.

674. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 65**
**ASSAULT**
**(HELEN ALLEN)**

675.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 191-197, 520-544 and 560-564 as and for this paragraph.

676.    The foregoing acts by the Defendant were done intentionally.

677.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

678.    Defendant took no steps to prevent Plaintiff from being assaulted.

679.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 66**
**ASSAULT**
**(THERESA BOSAN)**

680.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 205-214, 520-544 and 565-569 as and for this paragraph.

681.    The foregoing acts by the Defendant were done intentionally.

682.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

683.    Defendant took no steps to prevent Plaintiff from being assaulted.

684.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 67**
**ASSAULT**
**(SHRANDA CAMPBELL)**

685.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 205-214, 520-544 and 570-574 as and for this paragraph.

686.    The foregoing acts by the Defendant were done intentionally.

687.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

688.    Defendant took no steps to prevent Plaintiff from being assaulted.

689.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 68**
**ASSAULT**
**(KETURAH CARTER)**

690.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 222-236, 520-544 and 575-579 as and for this paragraph.

691.    The foregoing acts by the Defendant were done intentionally.

692.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

693.    Defendant took no steps to prevent Plaintiff from being assaulted.

694.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 69**
**ASSAULT**
**(MICHELLE DAHN)**

695. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 237-243, 520-544 and 580-584 as and for this paragraph.

696. The foregoing acts by the Defendant were done intentionally.

697. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

698. Defendant took no steps to prevent Plaintiff from being assaulted.

699. As a direct and proximate result of Defendant's conduct, Plaintiff was damaged.

**COUNT 70**
**ASSAULT**
**(TONYA EXUM)**

700. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 244-250, 520-544 and 585-589 as and for this paragraph.

701. The foregoing acts by the Defendant were done intentionally.

702. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

703. Defendant took no steps to prevent Plaintiff from being assaulted.

704. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 71**
**ASSAULT**
**(JEANNETTE GARDNER)**

705.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 251-257, 520-544 and 590-594 as and for this paragraph.

706.    The foregoing acts by the Defendant were done intentionally.

707.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

708.    Defendant took no steps to prevent Plaintiff from being assaulted.

709.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 72**
**ASSAULT**
**(ARLENE GOFORTH)**

710.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 258-264, 520-544 and 595-599 as and for this paragraph.

711.    The foregoing acts by the Defendant were done intentionally.

712.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

713.    Defendant took no steps to prevent Plaintiff from being assaulted.

714.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 73**
**ASSAULT**
**(CHRISTINE HARRIS)**

715. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 265-271, 520-544 and 600-604 as and for this paragraph.

716. The foregoing acts by the Defendant were done intentionally.

717. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

718. Defendant took no steps to prevent Plaintiff from being assaulted.

719. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 74**
**ASSAULT**
**(ORISSA HENRY)**

720. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 272-278 and 520-544 as and for this paragraph.

721. The foregoing acts by the Defendant were done intentionally.

722. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

723. Defendant took no steps to prevent Plaintiff from being assaulted.

724. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 75**
**ASSAULT**
**(LAWANDA JORDAN)**

725.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 520-544 and 279-298 as and for this paragraph.

726.   The foregoing acts by the Defendant were done intentionally.

727.   These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

728.   Defendant took no steps to prevent Plaintiff from being assaulted.

729.   As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 76**
**ASSAULT**
**(DANIELLE KUDIRKA)**

730.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 299-305, 493-503, 520-544 and 605-609 as and for this paragraph.

731.   The foregoing acts by the Defendant were done intentionally.

732.   These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

733.   Defendant took no steps to prevent Plaintiff from being assaulted.

734.   As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 77**
**ASSAULT**
**(TERRI LEWIS-BLEDSOE)**

735.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 306-313, 520-544 and 610-614 as and for this paragraph.

736.   The foregoing acts by the Defendant were done intentionally.

737.   These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

738.   Defendant took no steps to prevent Plaintiff from being assaulted.

739.   As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 78**
**ASSAULT**
**(CONSTANCE MADISON)**

740.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111 and 520-544 as and for this paragraph.

741.   The foregoing acts by the Defendant were done intentionally.

742.   These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

743.   Defendant took no steps to prevent Plaintiff from being assaulted.

744.   As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 79**
**ASSAULT**
**(CEPHANI MILLER)**

745.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 322-344 and 520-544 as and for this paragraph.

746.    The foregoing acts by the Defendant were done intentionally.

747.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

748.    Defendant took no steps to prevent Plaintiff from being assaulted.

749.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 80**
**ASSAULT**
**(MIYOSHI MORRIS)**

750.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 345-351, 520-544 and 615-619 as and for this paragraph.

751.    The foregoing acts by the Defendant were done intentionally.

752.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

753.    Defendant took no steps to prevent Plaintiff from being assaulted.

754.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 81**
**ASSAULT**
**(STEPHANIE SZOT)**

755.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 352-358, 520-544 and 620-624as and for this paragraph.

756.    The foregoing acts by the Defendant were done intentionally.

757.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

758.    Defendant took no steps to prevent Plaintiff from being assaulted.

759.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 82**
**ASSAULT**
**(LATRICIA SHANKLIN)**

760.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 440-458, 520-544 and 655-659 as and for this paragraph.

761.    The foregoing acts by the Defendant were done intentionally.

762.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

763.    Defendant took no steps to prevent Plaintiff from being assaulted.

764.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 83**
**ASSAULT**
**(SHIRLEY THOMAS-MOORE)**

765.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 359-365 and 520-544 as and for this paragraph.

766.   The foregoing acts by the Defendant were done intentionally.

767.   These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

768.   Defendant took no steps to prevent Plaintiff from being assaulted.

769.   As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 84**
**ASSAULT**
**(ROSE THOMAS)**

770.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 366-372 and 520-544 as and for this paragraph.

771.   The foregoing acts by the Defendant were done intentionally.

772.   These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

773.   Defendant took no steps to prevent Plaintiff from being assaulted.

774.   As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 85**
**ASSAULT**
**(TONI WILLIAMS)**

775.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 373-381 and 520-544 as and for this paragraph.

776.    The foregoing acts by the Defendant were done intentionally.

777.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

778.    Defendant took no steps to prevent Plaintiff from being assaulted.

779.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 86**
**ASSAULT**
**(BERNADETTE CLYBURN)**

780.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 382-388 and 520-544 as and for this paragraph.

781.    The foregoing acts by the Defendant were done intentionally.

782.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

783.    Defendant took no steps to prevent Plaintiff from being assaulted.

784.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 87**
**ASSAULT**
**(MARTHA CORBIN)**

785.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 520-544 and 625-629 as and for this paragraph.

786.    The foregoing acts by the Defendant were done intentionally.

787.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

788.    Defendant took no steps to prevent Plaintiff from being assaulted.

789.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 88**
**ASSAULT**
**(ANGELA GLENN)**

790.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 389-403, 520-544, and 630-634 as and for this paragraph.

791.    The foregoing acts by the Defendant were done intentionally.

792.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

793.    Defendant took no steps to prevent Plaintiff from being assaulted.

794.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 89**
**ASSAULT**
**(LADWYNA HOOVER)**

795.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 404-410, 520-544, and 635-639 as and for this paragraph.

796.    The foregoing acts by the Defendant were done intentionally.

797.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

798.    Defendant took no steps to prevent Plaintiff from being assaulted.

799.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 90**
**ASSAULT**
**(OGERY LEDBETTER)**

800.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 411-439, 520-544 and 640-644 as and for this paragraph.

801.    The foregoing acts by the Defendant were done intentionally.

802.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

803.    Defendant took no steps to prevent Plaintiff from being assaulted.

804.    As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 91**
**ASSAULT**
**(DERRICKA THOMAS)**

805. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 471-478, 520-544 and 645-649 as and for this paragraph.

806. The foregoing acts by the Defendant were done intentionally.

807. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

808. Defendant took no steps to prevent Plaintiff from being assaulted.

809. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 92**
**ASSAULT**
**(NICHEA WALLS)**

810. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 479-492, 520-544 and 650-654 as and for this paragraph.

811. The foregoing acts by the Defendant were done intentionally.

812. These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

813. Defendant took no steps to prevent Plaintiff from being assaulted.

814. As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**COUNT 93**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(CHRISTIE VAN)**
**(PRESERVED FOR APPEAL**

815.     The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-173, 504-549 and 660-664 as and for this paragraph.

816.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

817.     Defendant's conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

818.     Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

819.     As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 94**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(CHARMELLA LEVIEGE)**
**(PRESERVED FOR APPEAL)**

820.     The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 174-181, 520-544 and 550-554 and 665-669 as and for this paragraph.

821.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

171

822.    Defendant's conduct and the conduct of its employees and managers was extreme, outrageous and beyond the bounds of moral decency.

823.    Defendant's conduct and the conduct of its managers and employees was so outrageous that no reasonable person could be expected to endure it.

824.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 95
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (MARIA PRICE)
### (PRESERVED FOR APPEAL)

825.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 182-190, 520-544, 555-559 and 670-674 as and for this paragraph.

826.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

827.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

828.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

829.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

172

**COUNT 96**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(HELEN ALLEN)**
**(PRESERVED FOR APPEAL)**

830.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 191-197, 520-544, 560-564 and 675-679 as and for this paragraph.

831.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

832.   Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

833.   Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

834.   As a result of Defendant's conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 97**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(THERESA BOSAN)**
**(PRESERVED FOR APPEAL)**

835.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-128, 205-214, 565-569 and 680-684 as and for this paragraph.

836.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

837.   Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

173

838.   Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

839.   As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 98**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(SHRANDA CAMPBELL)**
**(PRESERVED FOR APPEAL)**

840.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 520-544, 570-574 and 685-689 as and for this paragraph.

841.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

842.   Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

843.   Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

844.   As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 99**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(KETRUAH CARTER)**
**(PRESERVED FOR APPEAL)**

845.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 222-236, 520-544, 575-579 and 690-694 as and for this paragraph.

846.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

847.   Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

848.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

849.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 100**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(MICHELLE DAHN)**
**(PRESERVED FOR APPEAL)**

850.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 237-243, 520-544, 580-584 and 695-699 as and for this paragraph.

851.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

852.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

853.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

854.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 101
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (TONYA EXUM)
### (PRESERVED FOR APPEAL)

855.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 244-250, 520-544, 585-589 and 700-704 as and for this paragraph.

856.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

857.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

858.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

859.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress, including Post Traumatic Stress Disorder and was damaged.

**COUNT 102**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(JEANNETTE GARDNER)**
**(PRESERVED FOR APPEAL)**

860.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 251-257, 520-544, 590-594 and 705-709 as and for this paragraph.

861.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

862.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

863.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

864.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 103**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ARLENE GOFORTH)**
**(PRESERVED FOR APPEAL)**

865.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 258-264, 520-544, 595-599 and 710-714 as and for this paragraph.

866.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

177

867.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

868.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

869.    As a result of Defendant's conduct and the conduct of its managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 104**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(CHRISTINE HARRIS)**
**(PRESERVED FOR APPEAL)**

870.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 265-271, 520-544, 600-604 and 715-719 as and for this paragraph.

871.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

872.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

873.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

874.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 105**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ORISSA HENRY)**
**(PRESERVED FOR APPEAL)**

875.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 272-278 and 720-724 as and for this paragraph.

876.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

877.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

878.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

879.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 106**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(LAWANDA JORDAN)**
**(PRESERVED FOR APPEAL)**

880.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 279-298 and 725-729 as and for this paragraph.

881.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

882.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

883.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

884.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

### COUNT 107
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (DANIELLE KUDIRKA)
### (PRESERVED FOR APPEAL)

885.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 299-305, 493-503, 605-609 and 520-544 and 730-734 as and for this paragraph.

886.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

887.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

888.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

889.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 108**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(TERRI LEWIS-BLEDSOE)**
**(PRESERVED FOR APPEAL)**

890.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 306-313, 520-544, 610-614 and 735-739 and 445-461 as and for this paragraph.

891.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

892.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

893.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

894.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 109**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(CONSTANCE MADISON)**
**(PRESERVED FOR APPEAL)**

895.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs  1-111, 520-544 and 740-744 as and for this paragraph.

896.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

897.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

898.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

899.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 110
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (CEPHANI MILLER)
### (PRESERVED FOR APPEAL)

900.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 322-344, 520-544 and 745-749 as and for this paragraph.

901.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

902.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

903.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

904.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 111**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(MIYOSHI MORRIS)**
**(PRESERVED FOR APPEAL)**

905.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 345-351, 520-544, 615-619 and 750-754 as and for this paragraph.

906.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

907.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

908.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

909.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 112**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(STEPHANIE SZOT)**
**(PRESERVED FOR APPEAL)**

910.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 352-358, 520-544, 620-624 and 755-759 as and for this paragraph.

911.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

183

912.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

913.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

914.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 113**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(SHIRLEY THOMAS-MOORE)**
**(PRESERVED FOR APPEAL)**

915.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 359-365, 520-544 and 765-769 as and for this paragraph.

916.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

917.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

918.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

919.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 114
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
### (ROSE THOMAS)
### (PRESERVED FOR APPEAL)

920.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 366-372, 520-544 and 770-774 as and for this paragraph.

921.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

922.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

923.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

924.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 115
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
### (TONI WILLIAMS)
### (PRESERVED FOR APPEAL)

925.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 373-381, 520-544 and 775-779 as and for this paragraph.

926.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

927.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

928. Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

929. As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 116**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(BERNADETTE CLYBURN)**
**(PRESERVED FOR APPEAL)**

930. The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-162, 382-388, 520-544 and 780-784 as and for this paragraph.

931. Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

932. Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

933. Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

934. As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 117
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (MARTHA CORBIN)
### (PRESERVED FOR APPEAL)

935.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 520-544, 625-629 and 785-789 as and for this paragraph.

936.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

937.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

938.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

939.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 118
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ANGELA GLENN)
### (PRESERVED FOR APPEAL)

940.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 389-403, 520-544, 630-634, and 790-794 as and for this paragraph.

941.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

187

942.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

943.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

944.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 119
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (LADWYNA HOOVER)
### (PRESERVED FOR APPEAL)

945.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 404-410, 520-544, 635-639 and 795-799 as and for this paragraph.

946.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

947.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

948.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

949.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**COUNT 120**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(OGERY LEDBETTER)**
**(PRESERVED FOR APPEAL)**

950.    The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 411-439, 520-544, 640-644 and 800-804 as and for this paragraph.

951.    Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

952.    Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

953.    Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

954.    As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 121
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (LATRICIA SHANKLIN)
### (PRESERVED FOR APPEAL)

955.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 440-458, 520-544 and 760-764 as and for this paragraph.

956.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

957.   Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

958.   Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

959.   As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## COUNT 122
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (DERRICKA THOMAS)
### (PRESERVED FOR APPEAL)

960.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 471-478, 520-544, 645-649 and 805-809 as and for this paragraph.

961.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

962.   Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

963.   Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

964.   As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

### COUNT 123
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (NICHEA WALLS)
### (PRESERVED FOR APPEAL)

965.   The Plaintiff adopts, realleges and incorporates by reference all of the allegations in paragraphs 1-111, 479-492, 520-544, 650-654 and 810-814 as and for this paragraph.

966.   Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

967.   Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

968.   Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

969.   As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, the plaintiff   and Plaintiff's similarly situated persons, respectfully request that this Court provide the following equitable and monetary relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b. Order Ford to implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

c. Enjoin Ford from discriminating against or harassing the Named Plaintiff and Ford's employees;

d. Appoint a monitor to supervise workplace conditions in each plant for a period of at least five (5) years;

e. Retain jurisdiction for the monitoring period to enforce the terms of any injunction, agreement or order;

f. Award back pay, lost future earnings, and reimbursement for lost income and for lost fringe benefits;

g. Award compensatory damages;

h. Award liquidated damages, if applicable;

i. Award punitive damages;

j. Award prejudgment interest;

k.  Award reasonable attorney's fees, expert witness fees, expenses and

Plaintiff's costs;

l.  Grant such Plaintiff's relief as the Court deems equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,
HUNT & ASSOCIATES, P.C.

By: /s/ Keith L. Hunt (electronic signature)
An Attorney for Plaintiffs

Keith L. Hunt
Bradley E. Faber
Hunt & Associates, P.C.
Three First National Plaza,
Suite 2100
Chicago, Illinois  60602
(312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassoclaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an attorney in this cause and that I caused to be served

Plaintiffs' Second Amended Class Action Complaint For Injunctive, Monetary and Class

Wide Relief on counsel for all parties of record as listed below by email through the Court's

CM/ECF system on April 18, 2016.

Timothy S. Millman
Kathleen M. Nemechek
Berkowitz Oliver Williams
Shaw & Eisenbrandt LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Tel.: (816) 561-7007

Eugene Scalia
Thomas M. Johnson, Jr.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel.: (202) 955-8500

Mark H. Boyle
Karen Kies DeGrand
Donohue Brown Mathewson & Smyth LLC
143 South Dearborn Street, Suite 800
Chicago, Illinois 60603
Tel.: (312) 422-0900

By: /s/ *Keith L. Hunt* (electronic signature)
An Attorney for Plaintiffs